**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JAMES N. ESTEP,**

      **Petitioner,**

**v.**                                     **Case No. 3:10-cv-00396**

**DAVID BALLARD, Warden,
Mount Olive Correctional Complex,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody (Docket No. 2) and Respondent's Motion for Summary Judgment (Docket No. 12). Respondent filed a Response to the habeas corpus petition on May 28, 2010 (Docket No. 11), and Petitioner filed a Response in opposition to the Motion for Summary Judgment on June 28, 2010 (Docket No. 15). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge and, by Standing Order, has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**     **Procedural History**

The following details the procedural history which is relevant to Petitioner's request for relief.

1

**A.    Petitioner's State Conviction and Sentence**

On July 11, 2002, in the Circuit Court of Putnam County, West Virginia, a grand jury returned an indictment charging Petitioner with the felony offenses of murder in the first degree (Count One), nighttime burglary (Count Two), and robbery (Count Three). (Docket No. 12-1 at 2). The State argued that on or about November 16, 2001, Petitioner was a passenger in a car driven by his girlfriend, Leslie D. Harless, in the area of Hurricane, West Virginia.[1] The car "broke down" near the residence of Donovan Barringer (hereinafter the "victim"). Petitioner knocked on the victim's door and requested assistance. The victim moved his pickup truck next to petitioner's girlfriend's vehicle and attempted to start the car using jumper cables. After victim's attempts were unsuccessful, Petitioner retrieved a baseball bat from his vehicle and struck the victim three times in the head, resulting in his death. Petitioner then dragged the victim's body into a field and entered the victim's home, removing the victim's wallet and two rifles. Thereafter, Petitioner and Ms. Harless drove to Grayson, Kentucky in the victim's vehicle where they rented a hotel room and spent the night. Petitioner was arrested at approximately 12:58 p.m. the following day at that location.

On January 24, 2003, at the conclusion of a four-day jury trial, Petitioner was convicted on two counts of the three-count indictment: murder in the first degree (Count One) and nighttime burglary (Count Two).[2] (Docket No. 12-1 at 6). Petitioner was sentenced to life imprisonment for Count One and a term of imprisonment not less than one year and not more than fifteen years for Count Two, the sentences to be served

---

[1] The facts adduced at trial are cited from Petitioner's petitions. (Docket Nos. 12-1 at 24-25 and 12-2 at 75).

[2] From the record, it appears that the robbery charge (Count Three) was not pursued as it was subsumed into the murder charge (robbery was the predicate offense for felony murder).

concurrently in the State penitentiary. *Id.* at 8. Petitioner was represented prior to and during his trial by attorneys Daniel Corey and James McCoy. (Docket No. 12-2 at 74).

### B.   Petitioner's Direct Appeal of his Conviction and Sentence

Petitioner, by counsel, John H. Reed, III, filed a petition appealing his conviction and sentence in the Supreme Court of Appeals of West Virginia on September 30, 2003. (Docket Nos. 12-2 at 74 and 12-1 at 20-62). He argued that the Circuit Court erred in:

A. Denying his motion to suppress the tape recorded statements made by him after arrest to law enforcement.

B. Not excluding State's Exhibit Nos. 8 and 9, what Petitioner defines as "gruesome" photographs of the victim's body, into evidence because the danger of unfair prejudice was disproportionate to the value of the evidence.

C. Not instructing the jury that if Petitioner was found guilty of murder in the first degree, with a recommendation of mercy, that Petitioner would be eligible for parole only after serving 15 years.

D. Not asking the jury if they had any reason to not consider returning a verdict of murder in the first degree with a recommendation for mercy.

E. Failing to dismiss count three of the indictment, robbery in the first degree, after the State elected to use count three as the predicate to prove felony murder, amounting to "double jeopardy."

Petitioner also asserted that he was prejudiced by the following:

F. Ineffective assistance of counsel.

G. Cumulative errors resulting in denial of a fair and impartial trial.

(Docket No. 12-1 at 36-37). The Supreme Court of Appeals of West Virginia refused the Petition for Appeal by Order entered April 28, 2004. *Id.* at 14-18.

### C.   Petitioner's State Habeas Petition

Upon denial of his direct appeal, Petitioner, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus ad Subjiciendum in the Circuit Court of Putnam County, West Virginia. (Docket No. 12-2 at 2-8). Petitioner asserted the following errors:

A.  Attorneys failed to discuss bifurcation of sentencing with the accused.

B.  Court failed to give a jury instruction on first degree murder with a recommendation for mercy.

C.  Court admitted gruesome photographs of the victim.

D.  Counsel provided ineffective assistance.

*Id.* at 6-7.

Subsequently, Petitioner amended his petition with the assistance of counsel, Joseph K. Reeder, to state that that his trial counsel provided an ineffective defense by failing to adequately or effectively do the following:

A.  Research the rules of prompt presentment in the State of Kentucky, where Petitioner was arrested, and effectively argue the same during the suppression hearing for the suppression of Petitioner's statements to law enforcement.

B.  Move for a change of venue.

C.  Raise a diminished capacity or intoxication defense by calling Dr. F. Joseph Whelan, MD, MS, FAPA, as a witness.

D.  Discuss with Petitioner his right to a bifurcated trial and move for a bifurcated trial.

E.  Request a jury instruction on first degree murder with a recommendation for mercy.

Petitioner's Amended Petition further argued that the trial court erred by doing the following:

F.  Refusing to suppress statements made by Petitioner that were taken by law enforcement in violation of the rule of prompt presentment.

G.  Allowing the introduction of gruesome photographs of the victim at trial.

H.  Failing to instruct the jury on first degree murder with mercy.

4

*Id.* at 14-15. Following omnibus hearings on August 30, 2007 and March 6, 2008, the Circuit Court of Putnam County, West Virginia denied the Amended Petition by Order entered July 23, 2008. *Id.* at 74 and 31-58.

### D.     Petitioner's State Habeas Appeal

Petitioner, by counsel, Mr. Reeder, appealed the Circuit Court's decision to the Supreme Court of Appeals of West Virginia on July 23, 2009, re-stating the grounds of error alleged in the petition submitted to the Circuit Court. *Id.* at 69-92. The Supreme Court refused to hear the petition for appeal on November 12, 2009. *Id.* at 60.

### E.     Petitioner's Present Federal Habeas Petition

Petitioner, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254 on March 25, 2010, asserting that he is being incarcerated in State prison in violation of the Constitution, laws, or treaties of the United States on eleven grounds:

1.   Eight claims of alleged ineffective assistance of counsel.

2.   The trial court's admission of allegedly prejudicial, gruesome photographs.

3.   The trial court's alleged failure to properly instruct the jury.

4.    Alleged cumulative errors.

(Docket Nos. 2 and 3). On the same date, Petitioner applied to proceed without prepayment of fees or costs; the Court granted the application on March 26, 2010. (Docket Nos. 1 and 6). Respondent filed a Response on May 28, 2010, generally denying that any violation of Petitioner's rights occurred, but conceding that Petitioner's petition was timely filed, and that Petitioner colorably exhausted his State remedies. (Docket No.

11).[3] On the same date, Respondent filed a Motion for summary judgment and accompanying memorandum. (Docket Nos. 12 and 13). Petitioner filed a Response in opposition to Respondent's Motion for Summary Judgment on June 28, 2010. (Docket No. 15). Thus, the matter is ripe for resolution.

II.    **Standards of Review**

A.    **Standard of Review for Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Motions for summary judgment impose a heavy burden on the moving party; for, it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must include the existence of disputed facts that are material, meaning

---

[3] Respondent's response was timely filed pursuant to the Court's order granting him an enlargement of time. (Docket No. 9).

that the facts might affect the outcome of the suit under applicable law, as well as genuine, in that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

### B.    <u>Standard of Review for § 2254 Petitions</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), but "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Respondent stipulates (Docket No. 11 at 2), and the undersigned finds, that Petitioner has effectively exhausted his State judicial remedies, as discussed *infra* section III. Thus, the Court may consider the substantive merits of the petition. However, the Court may not grant habeas relief unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also Williams v. Taylor,* 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor,* 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court reviews the record and clearly established Supreme Court law. *Bell v. Jarvis,* 236 F.3d 149 (4th Cir. 2000). However, the federal court must still "confine [its] review to whether the state court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Id.* at 158, quoting *Bacon v. Lee,* 225 F.3d 470, 478 (4th Cir. 2000).

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the State court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

8

Further, "[t]o establish that habeas relief is warranted on the § 2254(d)(2) ground that the state court's decision was based on an 'unreasonable determination of the facts in light of the evidence presented in the state court proceeding,' a Petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a State court's factual findings are correct." *Foster v. Johnson,* 293 F.3d 766, 776 (5th Cir. 2002).

## III.   **Timeliness of Petition**

In 1996, the AEDPA established a one-year limitation period within which to file any Federal habeas corpus motion. 28 U.S.C. § 2244(d). The limitation period shall run from the latest of:

> A) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court, the one year limitation begins to run when the time for filing such a writ expires.

In the present case, Petitioner was sentenced on January 24, 2003. (Docket No. 12-1 at 8). He was credited for time served, thereby making his effective sentencing date November 19, 2001. *Id.* Petitioner's direct appeal to the Supreme Court of Appeals of West Virginia ("WVSCA") was refused on April 28, 2004. *Id.* at 14-18. Petitioner did not file a writ of certiorari with the Supreme Court of Appeals of the United States and thus, his conviction became final on April 28, 2004. However, Petitioner's filing of a state habeas petition tolled any running of the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2) (providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also Harris v. Hutchinson,* 209 F.3d 325, 327 (4th Cir. 2000). Here, the one-year limitations period began running on November 12, 2009, the day the WVSCA denied Petitioner's appeal of his habeas petition. (Docket No. 12-2 at 60). Petitioner filed his Federal habeas petition on March 25, 2010, well within the one-year limitations period. (Docket Nos. 2 and 3). Petitioner's petition is therefore timely.

## IV.   <u>Exhaustion of State Remedies</u>

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *see also Breard v. Pruett,* 134 F.3d 615, 619 (4th Cir. 1998). To provide the State with this opportunity, "the prisoner must 'fairly present' his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997).

The habeas petitioner must raise his claim before every available state court, including those courts like the WVSCA whose review is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 847 (1999).

Moreover, the burden of demonstrating fair presentment lies with the habeas petitioner, who must "do more than scatter some makeshift needles in the haystack of the state court record." *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir. 1994). "It is not necessary to cite book and verse on the federal constitution so long as the constitutional substance of the claim is evident," *West v. Wright,* 931 F.2d 262, 266 (4th Cir. 1991), such that "both the operative facts and the controlling legal principles [are] presented to the state court." *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000).

Thus, the Supreme Court has held that a "litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim ... a *case deciding such a claim on federal grounds.*" *Reese,* 541 U.S. at 32 (emphasis added). The Court drew no distinction between citation to a state—as opposed to a federal—case, so long as the cited case rested its holding on federal law. *Id.*; *see Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). Accordingly, our sister circuits have uniformly concluded that citation to such a state case, as a general matter, provides fair presentment of a federal constitutional claim. *See, e.g., Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir. 2005); *Peterson,* 319 F.3d at 1158; *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir. 1999); *Barrett v. Acevedo,* 169 F.3d 1155, 1161-62 (8th Cir. 1999); *Hannah v. Conley,* 49

F.3d 1193, 1196 (6th Cir. 1995); *Scarpa v. Dubois*, 38 F.3d 1, 6-7 (1st Cir.1994). *See also*

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (finding that Petitioner's

citation to a state case "alerted the state court to his Sixth Amendment claim" and thus

fairly presented the claim).

Petitioner raised in his State habeas petitions five of the eight claims of ineffective

assistance of counsel that he raises in his Federal petition, including his claims relating

to (1) prompt presentment, (2) venue, (3) diminished capacity, (4) bifurcation, and (5)

jury instruction. (Docket No. 12-2 at 81-88). On these claims, he raised Federal grounds,

specifically referencing the Sixth Amendment and *Strickland v. Washington*, 466 U.S.

668 (1984), as well as State grounds. *Id.* The Court finds that these claims were clearly

exhausted.

Petitioner raised in his direct appeal to the WVSCA the three remaining claims of

ineffective assistance of counsel asserted herein, including claims that his trial counsel

failed to object to (1) good character evidence concerning the victim; (2) the State's

Exhibit No. 2, a "gruesome" photograph of the victim, and Exhibit No. 5, a video of the

same; and (3) Exhibit Nos. 19 through 23 for failure to establish proper chain of custody.

(Docket No. 12-1 at 55-59). Although Petitioner primarily relies on State law, he

mentions the Sixth Amendment to the United States Constitution, thereby alerting the

State Court to the potential Federal nature of his claim. *Id.* at 56. Therefore, the Court

finds that these claims are exhausted as well.

Petitioner asserted his second and third grounds of error in his direct appeal and

his State habeas petitions, including his claim that the trial court improperly admitted

what he deems to be "gruesome" photographs of the victim and that the trial court

incorrectly instructed the jury. (Docket Nos. 12-1 at 47-52 and 12-2 at 90-91). However, in the State appeal and habeas petitions, Petitioner did not provide the Constitutional basis of these claims, instead relying exclusively on State law. *Id.* Consequently, Petitioner has arguably failed to exhaust his state remedies on these claims.  In his brief in support of his Motion for Summary Judgment, Respondent alludes to this point as related to the admission of the photographs, stating that Petitioner's claim is "phrased solely as a matter of state law" (Docket No. 13 at 34); however, Respondent states in his response to Petitioner's Federal habeas petition that all of Petitioner's claims appear "to be colorably exhausted." (Docket No. 11 at 2). Therefore, rather than belabor the point, the undersigned will deem these claims exhausted and address them on their merits, again noting that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Petitioner raised his final claim concerning alleged cumulative errors in his direct appeal to the Supreme Court of Appeals of West Virginia, asserting that the cumulative effect of numerous alleged trial errors violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (Docket No. 12-1 at 59-61). The undersigned finds that Petitioner exhausted this claim.

## V.   **Analysis**

As stated, Petitioner raises four grounds of error in his petition: (1) ineffective assistance of counsel; (2) admission of prejudicial, gruesome photographs; (3) failure to properly instruct the jury; and (4) cumulative errors. (Docket Nos. 2 and 3).

A.   **Ground One: Ineffective Assistance of Counsel**

As stated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 688 (1984), the "Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause," which guarantees a criminal defendant's right to counsel. *Strickland*, 466 U.S. at 685. Furthermore, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 686, quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

In *Strickland*, the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

14

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a Petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable matter. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Here, Petitioner asserts that his attorneys, Daniel Corey and James McCoy, provided ineffective assistance before and during his trial. (Docket No. 3 at 1). Applying the *Strickland* standard, and based upon all of the evidence of record, the Court will analyze and address Petitioner's eight allegations of ineffective assistance of counsel in the order that they were presented by Petitioner.

### 1. **Failure to adequately prepare and research regarding presentment**

Petitioner states that he was arrested on November 17, 2001 at 12:58 p.m. and that he was purportedly read his Miranda rights within minutes of his arrest, after which he made at least four statements to law enforcement officers, including incriminating statements, the last two of which were made at approximately 5:05 p.m. and 5:45 p.m.

(Docket No. 3 at 3).[4] Petitioner states that he, by counsel, moved to suppress the statements, arguing that they violated West Virginia's "prompt presentment rule" that requires arresting officers to present a defendant to a magistrate without unnecessary delay after arrest. *Id.*, citing W. Va. Code § 62-1-5 and Rule 5(a) of the W. Va. Rules of Criminal Procedure.

Petitioner further states that at a pre-trial suppression hearing held on September 5, 2002, the trial judge denied his motion to suppress, relying on the State's argument that Kentucky, the State where Petitioner was arrested, did not have a "prompt presentment" rule. *Id.* Petitioner argues that had his counsel adequately researched the issue, they would have learned that Kentucky does, in fact, have a similar "prompt presentment" rule, and they could have rebutted the State's claim. *Id.*, citing Rule 3.02 of the Kentucky Rules of Criminal Procedure. By extension, Petitioner argues that if his counsel raised Kentucky's "prompt presentment" rule during the hearing, the trial judge would likely have suppressed Petitioner's statements. *Id.*

In response, Respondent "concedes that the trial court was under the impression, and was not disabused by defense counsel, that Kentucky had no prompt presentment rule," which was clearly wrong because Kentucky does have such a rule, Kentucky Rule of Criminal Procedure 3.02(2).  (Docket No. 13 at 19). However, Respondent maintains that even if Petitioner's defense counsel had argued that Petitioner's statements should be suppressed pursuant to Rule 3.02(2), they would have been unsuccessful. *Id.* at 20. The State Court agreed with this contention, as discussed below.

---

[4] These facts are supplemented with the facts stated in Petitioner's State habeas appeal. (Docket No. 12-2 at 74).

In reviewing Petitioner's State habeas petition, the Circuit Court of Putnam County, West Virginia found that the representations made by Petitioner's counsel during the suppression hearing were "reasonably effective because Kentucky law [was] *not* applicable to this scenario." (Docket No. 12-2 at 38). The State Court applied *State v. Guthrie*, 315 S.E.2d 397 (W. Va. 1984) in holding that "where a defendant is being tried in West Virginia for a crime committed in West Virginia and there is a working relationship between Kentucky law enforcement and West Virginia law enforcement, West Virginia's prompt presentment rule is applicable, not Kentucky law." *Id.* at 39. Therefore, the State Court found "no indication that trial counsel's conduct or arguments were inappropriate." *Id.*

Furthermore, the State Court found, assuming *arguendo,* that even if trial counsel failed to adequately argue the presentment issue altogether, "the evidentiary ruling would have been the same." *Id.* The State Court referenced the portion of its decision addressing Petitioner's corresponding argument that the trial court erred in not suppressing the statements. *Id.* In this discussion, the State Court acknowledged that it had inappropriately applied Kentucky law at the suppression hearing because at that time, neither the Court nor counsel was aware of the *Guthrie* decision. *Id.* at 49. However, the State Court stated that if it had applied West Virginia law, it would not have suppressed Petitioner's statements and, therefore, its ruling would have been the same. *Id.* at 50. The State Court noted that when evaluating whether the "prompt presentment" rule was violated, it considers the reason for the delay in presentment and the temporal length of the delay. *Id.* Applying those considerations to Petitioner's case, the State Court found that there was no indication that law enforcement delayed

17

presenting Petitioner before a neutral judicial officer for the purpose of obtaining a confession or statement from him. *Id.* at 51.[5] Further, the Court found that the approximate four-hour period of time between when Petitioner was arrested and when he made the statements did not constitute an unreasonable delay under West Virginia case law. *Id.* at 52-53. The State Court then discussed how Kentucky's case law would yield the same conclusion. *Id.* at 53.

In addition, the State Court found that the outcome of the trial would have been the same irrespective of the suppression issue because the Petitioner, in waiving his Fifth Amendment right against self-incrimination, testified at trial to the same statements that he attempted to suppress. *Id.* at 39-40.[6] Also, the State Court recognized that the very statements which Petitioner attempted to suppress were the key statements that his counsel relied on in arguing that Petitioner did not intend to kill the victim. *Id.* at 40.

The Southern District of West Virginia recently considered a case in which a defendant claimed that he was not promptly brought before a magistrate judge, and the delay resulted in an involuntary confession. *Johnson v. Ballard*, 2008 WL 687451 (S.D.W.Va. 2008). The Court stated:

> In order to be entitled to federal habeas corpus relief, Petitioner must demonstrate that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also, Estelle v. McGuire,* 502 U.S. 62, 68 (1991); *Wainwright v. Goode,* 464 U.S. 78, 83

---

[5] Of note, Petitioner does not contend that his confession was coerced.

[6] The undersigned acknowledges that Petitioner now states that he would not have testified at trial if his statements were not admitted. (Docket Nos. 2 and 3). However, the Court need not address whether the outcome of the trial would reasonably have been different if not for the attorneys alleged professional errors, because the State Court found that Petitioner's counsel's actions were objectively reasonable under the first prong of *Strickland*. The undersigned concurs with that finding.

18

> (1983). Violations of State law which do not infringe upon specific federal constitutional protections are not cognizable under section 2254. 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine State-court determinations on State-law questions"); *Weeks v. Angeleone,* 176 F.3d 249, 262 (4th Cir. 1999)("when a Petitioner's claim rests solely upon an interpretation of State case law and statutes, it is not cognizable on federal habeas review").

*Id.* at *26. The Court further noted that "the prompt presentment rule is a matter of State Court criminal procedure" and thus, "to the extent that Petitioner's claim rests solely upon an interpretation of State law, it is not cognizable in federal habeas corpus." *Id.* at *27, citing *Estelle v, McGuire,* 502 U.S. 62; *Weeks v. Angelone,* 176 F.3d 249, 262 (4th Cir. 1999).

The State Court's post-conviction application of *Strickland* to the facts of this case is entitled to deference and did not involve an unreasonable application of federal law or determination of facts. Applying State law, the State Court found that counsel's actions were reasonable and that Petitioner was not prejudiced by counsel's representation during the suppression hearing because regardless of whether they had correctly argued the "prompt presentment" rule under Kentucky or West Virginia law, the evidentiary ruling would have been the same. Under Section 2254(e)(1), the State Court's findings on a habeas petition are presumptively correct absent clear and convincing evidence to the contrary. Here, the State Court's determination that Petitioner failed to meet his burden of establishing that his attorney's representation was deficient constitutes a reasonable application of *Strickland* to the facts of the case, and withstands scrutiny under 28 U.S.C. § 2254(d).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim of ineffective

assistance of counsel as relating to the rule of prompt presentment was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### 2.  **Failure to explore pre-trial publicity and move for change of venue**

Petitioner's second ineffective assistance of counsel claim argues that his attorneys did not adequately explore the prejudicial effects of the media coverage of his case on potential jurors. (Docket No. 3 at 4-5). Specifically, he states that during *voir dire* prospective jurors acknowledged that they were familiar with the facts and circumstances of his case due to extensive media coverage, but that rather than seeking individual *voir dire* where potential jurors would be more likely to respond candidly to questions regarding media publicity, his counsel posed questions to the entire jury pool where jurors were more likely to conceal their partiality in an effort to not "stick out." *Id.* at 4. Also, Petitioner argues that his counsel erred in not moving for a change of venue after becoming aware of the potential jurors' exposure to media coverage concerning the case.  *Id.* at 4-5). Petitioner believes that these acts satisfied the first *Strickland* prong because any reasonable attorney would have explored pre-trial publicity concerns and satisfied the second prong because his counsel did not vigorously contest the effects of pre-trial publicity in an adversarial setting, which presumes in favor or prejudice. *Id.* at 5.

In Petitioner's State habeas proceeding, the Court first considered the decision of Petitioner's defense counsel to not move for a change of venue. Relying on West Virginia case law, the State Court concluded that a "fair and impartial jury was seated in this matter and there is no indication that pretrial publicity had any affect on juror

perceptions." (Docket No. 12-2 at 41). The State Court highlighted the fact that under State law, the focus in ruling on a motion for change of venue is not "whether the community remembered or heard facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." *Id.* at 41-42, quoting *State v. Davis*, 511 S.E.2d 848 (W.Va. 1998). The State habeas court found no indication that trial counsel's failure to make such a motion was objectively unreasonable. *Id.* at 42.

Similarly, the State Court found no indication that trial counsel's decision to not question jurors further was objectively unreasonable, noting that the Court had addressed several inquiries to the jurors to examine any potential bias or prejudice based upon media accounts of the crime and all of the jurors indicated that they would be able to fairly consider the evidence of the case and were not biased or prejudiced. *Id.* The State Court pointed out that pursuant to the Supreme Court's ruling in *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), the constitutional requirement of impartiality does not require that the jurors are entirely ignorant of the facts or issues of the case. *Id.* Further, the State Court found that assuming *arguendo* that Petitioner's counsel failed to adequately *voir dire* the jurors or move for a change of venue, the outcome of the trial would have been the same because the jurors were able to directly judge his credibility and character when he testified at trial. *Id.* at 43.[7]

Petitioner fails to present clear and convincing evidence that the State Court's determination was contrary to or involved an unreasonable application of clearly established Federal law, or that it was based on an unreasonable determination of the

---

[7] *See supra* note 7.

facts as required for Federal habeas relief under 28 U.S.C. § 2254(d)(1). The State Court appropriately applied *Strickland* to the facts presented and found that counsel's manner of questioning the jurors and decision not to move for a change of venue constituted objectively reasonable trial strategy.

The law provides that where pretrial publicity is particularly inflammatory and saturates the community in which the trial is held, a change of venue is appropriate. *Rideau v. Louisiana,* 373 U.S. 723 (1963). In addition, inherent prejudice can be found where an unacceptable risk is presented of impermissible factors coming into play regardless of whether the jurors actually articulated a consciousness of a prejudicial effect. *Holbrook v. Flynn,* 475 U.S. 560, 571 (1986). Here, there is no indication that the pretrial publicity was sufficiently inflammatory or that there was an unacceptable risk of impermissible factors coming into play such as that it would have been objectively unreasonable for counsel to not request a change of venue. *See, e.g., Jacobs v. Horn*, 129 F.Supp.2d 390 (M.D.Pa. 2001) (rev'd in part on other grounds).

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim of ineffective assistance of counsel as relating to *voir dire* and venue was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### 3.  Failure to call witnesses about diminished capacity

Third, Petitioner argues that his counsel erred in not calling Dr. F. Joseph Whelan as a witness to argue for a more favorable sentence. (Docket No. 3 at 5). According to Petitioner, Dr. Whelan opined in a report dated December 19, 2002 that

Petitioner may have been only partially able to formulate intent, including the ability to premeditate, deliberate, and to have the specific intent to kill because he was under the influence of a combination of marijuana and oxycodon on that date, but that Petitioner did appear to have the specific intent to assault the victim. *Id.* Petitioner argues that any reasonable attorney would have called Dr. Whelan as a witness and introduced his report to mitigate against a sentence of life without mercy, satisfying the first prong of *Strickland*, and that if they had done so, the jury would have likely returned a verdict with a recommendation for mercy or found him guilty of a lesser included offense, satisfying the second prong of *Strickland. Id.* at 6.

In reviewing this argument in Petitioner's State habeas petition, the State Court found that Petitioner's counsel failed to call Dr. Whelan as a witness based upon trial strategy because the State chose to proceed under a theory of felony-murder, rather than murder in the first degree. (Docket No. 12-2 at 44). In addition, the Court concluded that counsel's decision to not call Dr. Whelan for the purpose of mercy was also a strategic decision in light of potential rebuttal testimony by two doctors who recognized that Petitioner had a history of drug abuse and opined that he was competent to stand trial and capable of understanding the nature of his crime, as well as the fact that Dr. Whelan's report stated that Petitioner had drastically changed his story. *Id.* at note 7. The State Court found this rationale to be reasonable. *Id.* at 44.

The State Court properly applied *Strickland* in finding that Petitioner's counsel's decision to not call Dr. Whelan as a witness was reasonable trial strategy. Petitioner has failed to meet his burden in proving that his counsel provided ineffective assistance in not calling Dr. Whelan. Further, the Court notes that in considering whether a counsel

has rendered ineffective assistance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690 (1984); *see also Flippo v. McBride*, 2010 WL 3452415, *6 (4th Cir. 2010), citing *Powell v. Kelly,* 562 F.3d 656, 670 (4th Cir. 2009). Petitioner's counsel clearly conducted a reasonable investigation and considered the fact that Dr. Whelan planned to testify that Petitioner's story "seemed to have changed substantially," as well as the fact that the prosecution had two potential witnesses to rebut Dr. Whelan's testimony that Petitioner may have been only partially able to formulate intent.  In light of the potential damage to Petitioner's case, Petitioner's counsel chose not call Dr. Whelan as a witness. The undersigned agrees that counsel's decision constituted trial strategy based upon a reasonable investigation.

Based upon the above, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim that his counsel was ineffective in not calling Dr. Whelan as a witness at trial was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### 4. <u>Failure to consult with Petitioner about bifurcation</u>

Fourth, Petitioner argues that his counsel failed to consult with him when deciding to proceed with a unitary trial, rather than a bifurcated trial, which was an option available to him as a defendant charged with first degree murder. (Docket No. 3 at 6-7). Petitioner claims that had there been a bifurcated trial, prejudicial evidence that was offered to prove his guilt would not have infected the sentencing phase, because the evidence would have been less probative at that stage and potentially inadmissible. *Id*.

24

at 7. Specifically, Petitioner contends that the jury was exposed to "gruesome" autopsy photographs of the victim, which were admitted to demonstrate the cause of death, as well as a crime scene videotape and evidence of the victim's good character. *Id.* Had there been a bifurcated trial, Petitioner believes that a jury determining his sentence would not have been exposed to this evidence and might have recommended a lesser sentence. *Id.* Petitioner states that his counsel failed to do everything possible to seek a lesser sentence for him, as any reasonable attorney would do; consequently satisfying the first prong of *Strickland.* He argues that he was prejudiced by this failure because, as a result, he received a harsher sentence: thereby, satisfying the second prong. *Id.*

The State Court found that Petitioner failed to prove that bifurcation was necessary under State law, citing the WVSCA's decision in *Salt v. LaRock*, 470 S.E.2d 613, 633-34 (W.Va. 1996) (Bifurcation is appropriate where "the integrity of the adversarial process which depends upon the truth-determining function of the trial process would be harmed in a unitary trial"). (Docket No. 12-2 at 44-45). In addition, the Court found that "trial counsel did discuss the matter with his client." *Id.* at 45. Further, the State Court found that counsel's decision to not move for bifurcation of the trial was "clearly a strategic decision" that was "objectively reasonable in light of the circumstances." *Id.*

An examination of the record reveals that the State Court's findings are correct. Petitioner does not present evidence, other than his own statements, to contravene his counsel's testimony that they discussed the bifurcation issue. Petitioner's trial counsel, Mr. McCoy, testified that he discussed the option of bifurcation with Petitioner and that they made a joint strategic decision not to bifurcate for various tactical reasons. (Docket

No. 12-7 at 8-9). For example, they believed their chances of successfully arguing for mercy and for the exclusion of evidence on prior bad acts were better in a unitary trial. *Id*. In view of this testimony, the undersigned affirms the State Court's finding that counsel did not, contrary to Petitioner's assertion, proceed with a unitary trial without discussing bifurcation with Petitioner.

In addition, the undersigned agrees that counsel's choice to proceed with a unitary trial was a strategic decision made after reasonable inquiry. This Court recently considered the same argument in *Muncy v. McBride*, 2009 WL 3190453 (S.D.W.Va. 2009). In *Muncy*, the District Court accepted and incorporated the Magistrate Judge's finding that the State Court properly determined that counsel's decision to not bifurcate the penalty phase of the trial did not rise to the level of ineffective assistance of counsel set out in *Strickland* when after researching the Petitioner's "life history," counsel made a strategic decision to present mitigating evidence to the jury in a unitary trial. *Muncy*, 2009 WL 3190453 at *10. Like defense counsel in *Muncy*, Petitioner's counsel was aware of Petitioner's past criminal history. In addition, counsel investigated the facts of the case and the prosecution's potential case. In light of the circumstances and the information they gathered, and in consultation with Petitioner, they strategically decided to proceed with a unitary trial. This choice was objectively reasonable.

Lastly, the State Court's finding that Petitioner failed to prove that bifurcation was necessary was based upon an interpretation of State law. Accordingly, the Court defers to this finding.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim that his counsel was

ineffective as regarding bifurcation of his trial was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### 5. <u>Failure to request clear instruction about the meaning of life with mercy</u>

Fifth, Petitioner argues that his counsel erroneously requested the trial court to delete a portion of a State-recommended jury instruction, which resulted in the instruction being less descriptive about the meaning of a mercy recommendation in the context of a life sentence. (Docket No. 3 at 7-8). Specifically, he states that at his counsel's request, the Court removed any reference that a life sentence with mercy meant that the Petitioner must serve a minimum of fifteen years before becoming eligible for parole. *Id.* Rather, the Court simply instructed that a recommendation of mercy meant that the defendant would be eligible for parole by the parole board. *Id.* at 8. Petitioner argues that this instruction violated the WVSCA's directive in *State v. Lindsey*, 233 S. E. 2d 734 (1977) that in a case charging first degree murder, the Court must, without request, instruct the jury that they can recommend mercy, which would allow the defendant to be eligible for parole, but *only after a serving the minimum term* (emphasis added). *Id.* Otherwise, Petitioner argues, the jury assumes that a recommendation for mercy means that the defendant is immediately eligible for parole. *Id.* at 9. Petitioner concludes that any reasonable attorney would have been aware of the *Lindsey* holding and would not have sought a misleading and potentially prejudicial instruction. He suggests that this error significantly reduced his chances for a recommendation of mercy; thus satisfying both prongs of *Strickland. Id.*

On this claim, the State habeas court found documented occurrences of lengthy discussions between Petitioner and his counsel regarding the proposed change to the

jury instruction. (Docket No. 12-2 at 46). Further, the Court found that it was clearly "a matter of strategic choice" as counsel weighed the possible effect that specific language regarding mercy would have on jurors. *Id*. Some jurors might have been less likely to recommend mercy being informed that Petitioner would be eligible for parole in 15 years, whereas some might have been encouraged by that specific fact and recommended mercy, knowing that Petitioner must serve that minimum term. *Id*. Regardless, the Court stated that "[s]uch trial determinations are strategic in nature and best left to trial counsel and the Petitioner" and there was "no indication that the trial counsel made an objectively unreasonable decision." *Id*. In addition, based on its analysis of State law, including *State v. Miller*, 363 S.E.2d 504, 509 (W.Va. 1987), the Court found that the State's more detailed instruction arguably interjected improper considerations into the jury's deliberations, and, as such, trial counsel "properly objection." *Id*. at 46-47.

The State Court additionally found no indication that the outcome would not have been the same, assuming *arguendo t*hat counsel did err, because the jury was properly instructed according to West Virginia law as stated in *Styles v. Chesapeake & O. Ry. Co.*, 59 S.E. 609 (1907) (recognizing the "instructions as a whole doctrine"). *Id*. at 47.   The Court concluded that the outcome of the case would have been the same because the "jury heard the evidence," which included Petitioner's admissions that he intended to steal the victim's truck, that he hit the victim numerous times with a baseball bat, and that he robbed the victim's home. *Id*.[8]

---

[8] *See supra* note 7.

First and foremost, the undersigned stresses that it is not the province of a Federal court to reexamine State court determinations on State law issues.  As emphasized by the Fourth Circuit, "[i]t is black letter law that a federal court may grant habeas relief "only on the ground that [the Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998), quoting 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68(1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.").

Under Federal law, "[a]n erroneous jury charge may form the basis of a habeas petition, either independently or in conjunction with an ineffective assistance of counsel claim. *Luchenburg v. Smith,* 79 F.3d 388, 391 (4th Cir. 1996), *citing Cupp v. Naughten,* 414 U.S. 141, 147 (1973). When a Petitioner contests the jury charge in conjunction with an ineffective assistance of counsel claim, the Petitioner still must satisfy the two-prong test of *Strickland*. However, jury instructions must be reviewed as a whole, not as isolated sentences. *Waine v. Sacchet,* 356 F.3d 510, 517 (4th Cir. 2004).

The Fourth Circuit recently considered a similar issue in *Bell v. Ozmint*, 332 F.3d 229 (4th Cir. 2003), an appeal from the United States District Court for the District of South Carolina. In *Bell*, the Petitioner argued that his trial counsel was ineffective for failing to request a jury instruction, as State law then permitted, that a sentence of life imprisonment would require the defendant to serve thirty years in prison before

29

becoming eligible for parole. *Bell*, 332 F.3d at 242. The Fourth Circuit affirmed the District Court in finding the following:

> We do not believe the state [habeas] court was unreasonable in finding neither deficient performance nor prejudice in trial counsel's failure to request a parole eligibility instruction under [State law]. First, trial counsel could certainly have made a strategic decision not to request an instruction telling the jury that Bell would be eligible for parole in thirty years if the jury recommended life imprisonment. For, as the Supreme Court has recognized, "[i]n a State in which parole is available, how the jury's knowledge of parole availability will affect the decision whether or not to impose the death penalty is speculative." *Simmons,* 512 U.S. at 168, 114 S.Ct. 2187 (plurality opinion). Trial counsel could certainly have been concerned that telling jurors that Bell could be out on the street in thirty years would dissuade them from recommending "life" imprisonment. Thus, the state [habeas] court reasonably found no deficient performance.

*Id.* at 243 (internal citations omitted).

The Fourth Circuit's analysis in *Bell* of the first *Strickland* prong is equally applicable in this case. According the proper deference to counsel's decisions in the course of representation and the State Court's application of the law, as required by *Strickland*, the undersigned agrees with the Court that counsel's decisions were objectively reasonable. The trial transcript reflects that counsel made a strategic decision regarding the jury instruction, after conducting a reasonable inquiry and consulting with Petitioner. (Docket No. 12-6 at 99-103). At trial, Petitioner's counsel, Mr. Corey, explicitly stated that they proposed the change after consulting with Petitioner. (Docket No. 12-6 at 99). In dialogue with the trial judge, counsel emphasized that they discussed the jury instruction with Petitioner "at length" and wished to object to the language regarding the minimum term of fifteen years. *Id.* at 100. This was a reasonable strategic decision in light of the fact that, as the State habeas court recognized, some jurors might have been of the opinion that fifteen years was an

30

inadequate minimum term and as a result, those jurors might have been dissuaded from recommending mercy when faced with that fact. Petitioner fails to prove that he disagreed with counsel's decision. In fact, the evidence cited above indicates that he approved the change to the jury instruction.

In addition, the instruction was not incorrect, it was only arguably incomplete. It did not imply that parole was *guaranteed* if the jurors granted mercy, as was the case in *Lindsey*, 233 S.E.2d 734 (W.Va. 1977), the case cited by Petitioner. In *Lindsey*, the trial court instructed the jury that if they recommended mercy, the defendant would be "entitled" to parole under the applicable State statute and when the jury specifically questioned the court about the defendant's right to parole if certain verdicts were returned, the court charged that if they recommended mercy, the defendant would be "subject" to parole under the applicable State statute. *Lindsey*, 233 S.E.2d at 736. The Supreme Court of Appeals found that this was error, stating that it was "obvious that the jury wanted information as to the effect of a mercy recommendation" and that it was "quite possible, in fact probable, that the jury in the instant case would have recommended mercy had they not thought the defendant would be entitled to parole." *Id*. at 738 and 739.

> Here, the Court propounded the following jury instruction, in relevant part:
>
> The defendant will not be eligible for parole unless you add to your verdict a recommendation for mercy. A recommendation of mercy would mean that the defendant would be eligible for parole consideration by the parole board. Otherwise, the defendant would be confined to the penitentiary for life without the possibility of parole. Mere eligibility for parole in no way guarantees that the defendant would ever be granted parole.

(Docket No. 12-6 at 122). There is a substantial distinction between the jury instruction offered in this case and the jury instruction offered in *Lindsey*. There is a marked

difference between the words "entitled" and "subject" as compared to the word "eligible." The former insinuates that parole is guaranteed while the latter identifies that parole is merely a possibility. The concerns that were paramount in *Lindsey* are not present here. Unlike *Lindsey*, there is no indication that the jurors in Petitioner's trial were confused as to the consequence of a recommendation of mercy. Also unlike *Lindsey*, the jurors were not misinformed. Here, the jury instruction was a correct statement of the law.

Petitioner argues that counsel's proposed jury instruction directly "ran afoul" of the State Court's holding in *Lindsey*. However, a reading of the facts and the Court's analysis in *Lindsey* indicates that *Lindsey* is, in fact, quite distinguishable from this case. Therefore, counsel's disregard of *Lindsey* was not objectively unreasonable. The State Court did not err in finding that Petitioner failed to establish the first *Strickland* prong.

In addition, Petitioner has failed to establish prejudice under the second prong of *Strickland*. The effect of the jury instruction is speculative. While the jury may have rejected mercy because the instruction omitted mention of the mandatory minimum sentence, the jury likewise may have refused a mercy recommendation if it concluded that the mandatory minimum sentence was too short.  Petitioner, of course, argues the former alternative, but as the State habeas court found, the latter alternative is equally probable. Petitioner's counsel requested that the trial court omit the 15-year reference for the very reason that it might dissuade some jurors from granting mercy. Accordingly, even if Petitioner could show that his counsel's representation was objectively unreasonable in this regard, which that he cannot, Petitioner has failed to show "that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-91.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim that his counsel was ineffective in proposing a revised jury instruction was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### 6.  <u>Failure to object to admission of good character of the victim</u>

Sixth, Petitioner points to the fact that his counsel did not object to the State's direct examination of the victim's nephew or its cross-examination of the Petitioner, both of which, Petitioner argues, tended to prove the victim's good character. (Docket No. 3 at 10). Petitioner argues that at the most, this evidence was admissible only during the sentencing phase of his trial and cites to West Virginia Rules of Evidence 401, 402, and 404(a)(2).  He contends that evidence of the victim's "good character" was not admissible to prove the merits of the State's case, because he did not offer evidence of the victim's bad character. *Id.* at 11. Petitioner argues that his counsel should have moved for bifurcation of the trial on the basis that good character evidence of the victim was admissible solely for sentencing purposes. *Id.* Alternatively, Petitioner argues that his counsel should have objected to the testimony on the ground that evidence of the victim's good character was inadmissible altogether. *Id.*  Petitioner states that he was prejudiced by his counsels' actions either way because the evidence was improperly admitted at the "guilt or innocence" phase of his trial. *Id.*

As discussed in Part IV *supra*, Petitioner raised this claim of ineffective assistance of counsel in his direct appeal, but the Supreme Court of Appeals of West Virginia refused to hear his petition. As such, this claim had never been discussed on its merits by a state court. Therefore, this Court must conduct an independent, but deferential, review of the record and the applicable law to determine whether the State Court's decision on this claim was legally or factually unreasonable. *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 2000). The Court must "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." *Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000).

Petitioner is correct that the State elicited testimony regarding the victim's good character without objection from Petitioner's counsel. (Docket Nos. 12-5 at 33-40 and 12-6 at 61). Respondent argues that counsel might not have objected for strategic reasons because the evidence was relevant to sentencing or because they "felt the need to tread lightly around this issue." (Docket No. 13 at 31). Rather than speculate as to whether counsel failed to object in error or for strategic reasons, the undersigned will proceed to the second *Strickland* prong to assess whether counsel's actions prejudiced Petitioner, if counsel's actions were in fact deficient.

The undersigned finds that even if counsel's failure to object was not "objectively reasonable," Petitioner is unable to establish prejudice. The testimony portrayed the victim as humble, hard working, honest, patriotic, patient, kind, gentle, of strong moral fiber, generous, and a caregiver. (Docket No. 12-5 at 37-40). These are characteristics that the jury could reasonably have inferred from the facts of the case. After all, the jury

knew that the victim was killed while selflessly trying to help the Petitioner and his girlfriend, who were complete strangers to the victim. Moreover, there is no indication that this testimony had any impact on the decisions of the jury, which was charged with deciding the guilt or innocence of the Petitioner regardless of the personality traits of the victim.  When establishing prejudice by the actions of ineffective counsel, it is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. Rather, Petitioner must demonstrate a "reasonable probability" that the result would have been different, which requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Here, there was an abundance of evidence to support the jury's verdict and no presumptively prejudicial factor was present in this matter. *See United States v. Cronic,* 466 U.S. 648, 659 (1984).

On this basis, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's counsel was not constitutionally ineffective in not objecting to testimonial evidence of the victim's good character during the trial and that Respondent is entitled to judgment as a matter of law on that claim.

### 7.  Failure to object to admission of images of victim's back

Seventh, Petitioner claims that his counsel failed to object *at trial* to the admission of State's Exhibit No. 2, a photograph taken at the crime scene of "bloody abrasions" on the victim's back, and State's Exhibit No. 5, a videotape taken at the crime scene showing the same. (Docket No. 3 at 14). Petitioner argues that this evidence was cumulative and non-probative because the facts for which they were offered to prove

35

were established by less prejudicial evidence. *Id.* In particular, expert testimony indicated that the victim's head injuries, not the back injuries, caused his death and State's Exhibit Nos.  3 and 4 demonstrated the location of the victim's body at the crime scene without showing the bloody abrasions. *Id.*  Petitioner argues that both prongs of *Strickland* are met because a reasonable attorney would have argued that the above exhibits were inadmissible under the West Virginia Rule of Evidence 403 "balancing test" and further, that the jury was likely inflamed by the unnecessary gruesome images and responded by imposing a more severe sentence. *Id.* at 15.

The undersigned finds that Petitioner's argument is without merit. The alleged "gruesome" character of Exhibit No. 5 was considered in a pretrial hearing on January 10, 2003. The Court clearly ruled that there was "nothing gruesome about the videotape." (Docket No. 12-7 at 71). It was reasonable for Petitioner's counsel to choose not to object to the admission of this videotape of the crime scene at trial. The videotape was probative, and the Court had previously ruled that it was not gruesome. The Sixth Amendment does not require counsel to raise meritless objections. Similarly, it was reasonable for Petitioner's counsel to not object to the admission of State's Exhibit No. 2, the photograph showing abrasions on the victim's back. Contrary to Petitioner's assertions, the photograph was probative and there is no indication that this image was gruesome or unduly prejudicial.   In fact, objections to these pieces of evidence may only have served to highlight them in the  minds of the jurors.

Petitioner cites *Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003) as supporting his argument that a "rational trier of fact could find these images gruesome and prejudicial to the point of violating fundamental fairness in [his] unitary trial." (Docket No. 15 at

13). However, *Spears* was based on a far different set of facts and its holding has no application in Petitioner's case. In *Spears*, the photographs at issue depicted the victim's "numerous post-mortem stab wounds, large gash wounds, exposed intestines and swollen face and black eye." *Spears*, 343 F.3d at 1227. The photographs were "unduly prejudicial" because they showed mostly post-mortem wounds and were thus not relevant to show that the victim suffered "conscious suffering," which was relevant at the penalty phase under Oklahoma law. *Id.* It is illogical to compare the photographs at issue in *Spears* to a photograph and video depicting abrasions on a victim's back.

Petitioner fails to establish that his counsel was objectively unreasonable in not objecting to these exhibits at trial. This was a reasonable strategic decision in light of the Court's pretrial ruling regarding the video, as well as the nature and probative value of the exhibits. The record indicates that an objection to the admission of these exhibits would have most likely been overruled by the Court.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's counsel was not ineffective under the Sixth Amendment in not objecting to the admission of State's Exhibit Nos. 2 and 5 at trial and that Respondent is entitled to judgment as a matter of law on that claim.

### 8. <u>Failure to object regarding chain of custody</u>

Eighth, Petitioner cites his counsel's failure to object to the admission of Exhibits 19 through 23 during Deputy Arthur's testimony. (Docket No. 3 at 16). The exhibits included photographs of a baseball bat, the hotel room where Petitioner was staying after the murder, and the keys found in the back of a toilet tank in the hotel room bathroom, as well as receipts of purchases made by Petitioner and his girlfriend after the

murder, a job application form from a fast food restaurant, and a list of phone calls made from the hotel room. *Id.* Petitioner states that the exhibits were not marked with a proper chain of custody and thus, the trial court relied solely on Deputy Arthur's recollection of the chain of custody. *Id.* Petitioner argues that a reasonable attorney would have objected to the admission of the evidence without a properly signed paper trail demonstrating custody and that there is a reasonable possibility that if counsel objected, the exhibits would not have been admitted and the jury would not have been inflamed by the evidence of Petitioner spending the victim's money or hiding the keys to the victim's vehicle and would have recommended a lesser sentence. *Id.*

The undersigned disagrees with Petitioner's assertion that a reasonable attorney would have objected in this circumstance. Sergeant Lisa Arthur authenticated State's Exhibits 19 through 21 as photographs of the baseball bat, the hotel room, and the automobile keys in the back of the toilet tank, stating that she was present when the photographs were taken and that they fairly and accurately depicted the subject matter therein on the date and time that the photographs were taken. (Docket No. 12-5 at 167). Sergeant Arthur identified State's Exhibits 22 and 23 as purchase receipts, a job application, a hotel room receipt, and a printed list of telephone calls made from the hotel room. *Id.* at 172. Sergeant Arthur stated that she picked up the purchase receipts and job application on the night stand in the hotel room and obtained the room receipt and list of phone calls from the hotel desk clerk on duty. *Id.* She then placed the items in evidence bags, tagged them, photocopied them, and secured them in the evidence facility at the Sheriff's office. *Id.* at 173. They remained in the evidence facility until Sergeant Arthur removed them on the day of her testimony and brought them with her

to Court. *Id.* This testimony established proper chain of custody under West Virginia State law. *See State v. Davis*, 266 S.E.2d 909 (W.Va. 1980); *see also State v. Beard*, 461 S.E.2d 486, 497 (W.Va. 1995) (A proper chain of custody may be established through the testimony of a police officer. "We find no abuse of discretion in the court's conclusion that a proper chain of custody had been established through the testimony of Sergeant Giacalone.").

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner fails to establish that his counsel was ineffective under the Sixth Amendment in not objecting to the admission of State's Exhibits 19 through 23 at trial and that Respondent is entitled to judgment as a matter of law on that claim.

### B.      Ground Two: Admission of Photographs of the Victim

In his second ground of error, Petitioner argues that the trial court improperly admitted, over his objection, two autopsy photographs of the victim's head, showing open wounds and a skull indentation. (Docket No. 3 at 22). Petitioner argues that the photographs were not probative of any element of felony murder and that they were inflammatory to the jury such that they infected his trial to the extent that the resulting conviction violated his due process as guaranteed by the Fourteenth Amendment. *Id.* at 22-23.

On this point, the State habeas court found that the trial court did not err in admitting the photographs because they were of "essential evidentiary value." (Docket No. 12-2 at 54), quoting Syl. Pt. 1, *State v. Rowe*, 259 S.E.2d 26 (1979); *State v. Wilson*, 310 S.E.2d 486 (1983). The Court stated that the photographs were admitted to show the injury to the victim's head, State's Exhibit No. 8 showing the upper left forehead and

State's Exhibit No. 9 showing top portion of the head. *Id.* Moreover, the Court concurred with the trial court's finding that "the photographs were not gruesome," but were limited to being close-ups of the wound itself, without an excessive amount of blood. *Id.* at 54-55. Prior to trial, the trial court limited the number of photographs showing injuries to the victim and even though it had determined that they were not gruesome, the trial court applied the balancing test in West Virginia Rule of Evidence 403, finding (1) that the probative value of the evidence was great as they were to be used by the pathologist to explain the injury and the pathologist's findings and to show intent to kill and (2) that the photographs were not gruesome. (Docket No. 12-2 at 55).[9]

"Decisions regarding the admission or exclusion of evidence are committed to the sound discretion of the [trial] court and will not be reversed absent an abuse of that discretion." *Stamper v. North Carolina*, 2005 WL 1806410, *5 (W.D.N.C. 2005), quoting *United States v. Lancaster,* 78 F.3d 888, 896 (4th Cir. 1996). *Accord United States v. Bostian,* 59 F.3d 474, 480 (4th Cir. 1995). "Indeed, absent 'circumstances impugning fundamental fairness or infringing specific constitutional protections,' the admissibility of evidence in a state trial does not even present a federal question for review." *Id.*, quoting *Grundler v. North Carolina,* 283 F.2d 798, 802 (4th Cir.1960); *see also Howard v. Moore,* 131 F.3d 399, 415 n. 18 (evidentiary ruling must violate a specific constitutional right or render entire trial fundamentally unfair).

The Court finds no error in the State habeas court's determination of this issue. The Court did not misapply Federal law or unreasonably determine the facts of this case

---

[9] The Court notes that page 27 is missing from Document 12-2, but that it has obtained this page from the State Court and reviewed it.

in affirming the trial court's ruling that the photographs were probative to show cause of death and that they were not "gruesome." Petitioner cites *Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003), but as noted above, the Court finds *Spears* inapplicable to Petitioner's case.  Here, the supposed prejudicial effect of the photographs was greatly minimized by the fact that photographs were focused on the head injuries themselves and did not depict an excessive amount of blood. A close up of a wound is far different than photographs of "numerous post-mortem stab wounds, large gash wounds, exposed intestines and swollen face and black eye," as was the case in *Spears*. *Spears*, 343 F.3d at 1227. Petitioner's right to due process was not violated. The evidentiary ruling in this case does not come close to warranting habeas relief.

Based upon the above, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim that the trial court erred in admitting two autopsy photographs of the victim's head injury was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### C.    <u>Ground Three: Jury Instruction</u>

In his third ground of error, which corresponds to his fifth instance of ineffective assistance of counsel, Petitioner asserts that the "trial court violated [his] Fourteenth Amendment due process rights by failing to instruct the jury that [he] would be eligible for parole in fifteen (15) years if they found [him] guilty of first degree murder with a recommendation for mercy." (Docket No. 3 at 23). Petitioner further states that the "instruction, as worded, gave the jury the erroneous perception that if Petitioner received mercy, he would *immediately* be eligible for parole," which he argues "infected

41

the trial with unfairness in that the jury likely declined to recommend mercy to foreclose any possibility of Petitioner's immediate parole eligibility." *Id.* Petitioner argues that "parole eligibility instruction, *by itself*, had a great impact on the jury's determination of the degree of guilt" because "[g]iven the facts of the case, it is likely that jurors would want to insure (sic) that Petitioner served substantial prison time before being considered for parole" and that it consequently, "virtually guaranteed that there would be no mercy recommendation, thus thwarting Petitioner's entire strategy to mitigate the degree of guilt," which was what the "trial was all about…since Petitioner testified that he hit the victim, resulting in the victim's death." *Id.* at 24.

In reviewing this assignment of error, the State habeas court noted that Petitioner did not present a statute, constitutional provision, or case law to support his argument. (Docket No. 12-2 at 56).[10] The Court found that the "jury was adequately instructed as to the applicable law" and that "there was no indication that the Court is required to instruct the jury on the specific sentence and mandatory minimum a defendant may receive." *Id.* Also, the Court found that to the extent that "the proposed instruction is characterized as a factor to be considered by the jury when determining mercy, this Court finds the instruction inappropriate. *See generally State v. Miller*, 178 W.Va. 618, 623, 363 S.E.2d 504, 509 (1987) (holding that 'an instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given')." *Id.* The Court further stated that when "considering the instructions as a whole, there is no indication that the jury was

_____

[10] *See supra* note 9.

improperly instructed. *See Styles v. Chesapeake & O. Ry. Co.*, 62 W.Va. 650, 59 S.E. 609 (1907) (recognizing the 'instructions as a whole doctrine')." *Id.*

Considering the second *Strickland* prong, the State Court found that assuming *arguendo* that the Court erred when instructing the jury, the error did not affect the outcome of the trial because "[m]erely refusing to tell the jury the terms of a mandatory minimum intuitively has no affect upon guilt or mercy." *Id.* The Court elaborated that "[g]uilt or innocence is determined by the State's satisfaction of the elements of the crimes beyond a reasonable doubt" and "[m]ercy is determined at the discretion of the jury." *Id.* "Adequate evidence existed to permit the jury to reach its finding." *Id.*

A federal court "exercises a limited role" when collaterally reviewing a State trial court's jury instructions, *Smith v. Bordenkircher,* 718 F.2d 1273, 1276 (4th Cir. 1983), and "the inquiry is narrow." *Murphy v. Holland,* 776 F.2d 470, 476 (4th Cir. 1985). Because ordinarily "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," *Grundler v. North Carolina,* 283 F.2d 78-98, 802 (4th Cir. 1960), jury instructions are not cognizable on federal habeas review, unless the giving of the instruction violated a right guaranteed by the Fourteenth Amendment. *See Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *Luchenberg v. Smith,* 79 F.3d 388, 391 (4th Cir. 1996) ("[A]n erroneous jury charge may form the basis of a habeas petition ... where the instruction 'so infected the entire trial that the resulting conviction violates due process' by rendering the trial fundamentally unfair."). The mere omission of a required jury instruction is deemed less likely to be prejudicial than an erroneous instruction. *Henderson,* 431 U.S. at 155.

43

Petitioner fails to articulate or demonstrate that he was denied due process as a result of the trial court's jury instruction. The only support that Petitioner provides for his argument that the "instruction, as worded, gave the jury the erroneous perception that if [he] received mercy, he would be *immediately* eligible for parole" is the State court's decision in *Lindsey*. Petitioner purports to be "aware that West Virginia state holdings are not binding on the federal courts." (Docket No. 3 at 25). He further states that the "*Lindsey* opinion is offered solely to support [his] assertion that reasonable jurists could find that such an instruction could infect the outcome of a first degree murder trial in West Virginia." *Id.* However, Petitioner cites no Federal case law supporting this contention.

In West Virginia, a defendant convicted of murder of the first degree in State court "shall be punished by imprisonment in the penitentiary for life" subject to the exception that "the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole" after serving a minimum of fifteen years. W.Va.Code § 62-3-15. Trial judges are required to instruct the jury that mercy is an option, *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412, 422 (1983), but judges are forbidden to instruct the jury on what factors they should consider in determining whether to grant mercy. *State v. Miller,* 178 W.Va. 618, 363 S.E.2d 504, 509 (1987).

Although a Federal habeas court is "without authority to correct a simple misapplication of state criminal law or procedure," *Luchenburg v. Smith*, 79 F.3d. 388 (4th Cir. 1996), whether or not the jury instruction given by the trial court in Petitioner's

case was in fact incorrect under State law bears on whether Petitioner's right to due

process was violated.  In *Lindsey*, the Supreme Court of Appeals of West Virginia stated:

> It is the duty of the jury to determine the guilt or innocence of the accused in accordance with the evidence introduced at the trial and it must not concern itself with matters of possible parole or probation.

*Lindsey*, 233 S.E.2d at Syl. pt. 4. However, the Court also stated:

> In a case in which a jury may return a verdict of guilty of murder in the first degree, it is the mandatory duty of the trial court, without request, to instruct the jury that to such verdict it may add a recommendation of mercy, that such recommendation would mean that the defendant could be eligible for parole consideration only after having served a minimum of ten years and that otherwise the defendant would be confined to the penitentiary for life without possibility of parole.

*Id.* at  Syl. pt. 3.  In a later case, the Court acknowledged that these directives in *Lindsey*

"seem contradictory." *State v. Cook*, 332 S.E.2d 147, 160 (W.Va. 1985). However, the

Court noted that the "critical distinction...is between the actual grant of parole and

eligibility for parole consideration." *Id.*

The WVSCA has acknowledged the difficulty in applying *Lindsey* to other cases.

For instance, in *State v. Wayne*, 245 S.E.2d 838 (W.Va. 1978) (overruled on other

grounds), the appellant argued that the jury instruction quoted below "influenced the

jury not to recommend mercy:"

> If you find the Defendant guilty of murder in the first degree, the Court must sentence him to confinement in the penitentiary for life and the Defendant shall not be eligible for parole, unless you, in your sole discretion, further find and add to the verdict, a recommendation of mercy, in which event the Court must sentence him to confinement in the penitentiary for life, but the Defendant shall be eligible for parole as provided by law.

*Wayne*, 245 S.E.2d at 842. In evaluating the appellant's argument, the Court recognized

that in *Lindsey*, the Court "reversed a conviction due to an instruction very similar to

45

the one presented here," but rationalized that "the instruction in *Lindsey* substituted the word 'entitled' for 'eligible' and the judge answered the jury's questions concerning the effect of a mercy recommendation." *Id.* The Court explained:

> The question of instructing the jury concerning the possible effect of a recommendation of mercy is very difficult, and no matter what instruction is given, the defendant can conceive a logical reason why he has been injured by any particular instruction. If the instruction sets forth the number of years the defendant must serve before eligibility, then the defendant can argue that the jurors thought that number of years insufficient and, therefore, treated him more harshly. If no number of years is stated, then the defendant can argue that the jury did not know how long he would be required to serve before being eligible for parole, and treated him harshly to avoid any early release. The same applies to any other wording of this particular instruction.
>
> Consequently, we hold that any instruction on this issue is very much a question of trial tactics and that the defendant is entitled to any instruction on the subject which correctly states the law and which he deems will present the proposition in its most favorable light. As the defendant did not object in the case before us, and as it is a question of trial tactics coming squarely within our ruling on such matters in *State v. Thomas*, W.Va., 203 S.E.2d 445 (1974), and we hold that the trial judge did not err.

*Id.* at 842-843.

In a later case, the WVSCA was faced with the same question, acknowledging that the "dispositive issue in this case is the trial court error in instructing the jury that, if they found the appellant guilty with recommendation of mercy, the appellant would be eligible for parole" and that "[w]hile it was an accurate statement, this instruction was misleading because it gave the jury members, who are not presumed to have knowledge of the law, the impression that the appellant could go free immediately at the whim of the parole board." *State v. Headley*, 282 S.E.2d 872, 875 (W.Va. 1981). The Court conceded, "[w]e have struggled with the problem created by this instruction for several years," but the Court ultimately held:

46

> Today we reiterate what we stated in *Wayne*: "the defendant is entitled to any instruction which correctly states the law and which he deems will present the proposition in its most favorable light." 245 S.E.2d at 843. This is our recognition of the tactical considerations involved in the wording of the instruction.

*Id.* The Court found, however, that in *Headley*, it was "clear that the defendant's acquiescence to the court's wording of the instruction was less a tactical choice than it was an oversight, making the conviction susceptible to collateral attack for ineffective assistance of counsel." *Id.* Therefore, the Court held that "when the defendant fails to offer an instruction on the effect of a recommendation of mercy when one is appropriate, the trial court must give an instruction which comports with the holding in *State v. Lindsey, supra." Id.*

Based on *Lindsey* and its progeny cited above, the trial court propounded the correct jury instruction in this case. As discussed, the undersigned finds that Petitioner's counsel clearly made a tactical decision regarding the jury instructions in cooperation with Petitioner. (Docket No. 12-6 at 99-103). As such, the Court was obliged to grant Petitioner's request to charge the jury with a "mercy" instruction which correctly stated the law and which Petitioner's counsel viewed as presenting the proposition in the most favorable light. Admittedly, the State habeas court might not have been aware of the *Lindsey* decision in stating in its decision that "there was no indication that the Court is required to instruct the jury on the specific sentence and mandatory minimum a defendant may receive." (Docket No. 12-2 at 56). Petitioner did not cite *Lindsey* in his State habeas petition. (Docket No. 12-2 at 13-28). Regardless of its reasons, however, the trial court gave the jury the correct instruction as demanded by the circumstances.

47

Not surprisingly, there is no Federal law on point that supports Petitioner's assertion that the "mercy" jury instruction given in his case violated his Constitutional rights. There is no indication that the jury instruction "so infected the entire trial that the resulting conviction violate[d] due process." *Luchenberg,* 79 F.3d at 391, quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Petitioner's argument that the instruction affected the jury's decision to find him guilty is illogical. At most, the instruction might have only affected the jury's mercy recommendation. However, the inclusion of the fifteen-year minimum term language might have prejudiced the jury to not recommend mercy, which is why Petitioner's counsel asked that it be omitted. There is no indication that the jury instruction, as worded, confused the jury in any way. Petitioner argues that because he was not granted mercy it was likely because of the jury instruction. The facts of this case argue otherwise.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the State Court's denial of habeas corpus relief on Petitioner's claim that the trial court's jury instruction was in error was not legally or factually unreasonable and that Respondent is entitled to judgment as a matter of law on that claim.

### D. <u>Ground Four: Cumulative Errors</u>

Petitioner's final assignment of error is that his due process rights were violated "by the accumulation of trial errors that may be harmless individually, but, taken together, infected [his] trial with fundamental unfairness." (Docket No. 3 at 30). "In *Fisher v. Angeleone,* 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that 'legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error.'" *Greene v. Hoke*, 2009 WL 774491 (S.D.W.Va.

2009). "Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors." *Id.*; *see also Daniel v. West Virginia*, 1999 WL 713865, *8 (4th Cir. 1999) ("Cumulative effect analysis only applies where there are two or more actual errors, not to the cumulative effect of non-errors...Since Daniel has not shown that the district court committed any actual error, we are not persuaded that 'the entire trial was so fundamentally unfair that [Daniel's] due process rights were violated.'"). Here, the Court finds that Petitioner has made no case for constitutional error, much less cumulative error.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's due process rights were not violated by cumulative trial errors and that Respondent is entitled to judgment as a matter of law on that claim.

## VI.  Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Respondent's Motion for Summary Judgment (Docket No. 12) be **GRANTED**; and

2. Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody (Docket No. 2) be **DISMISSED** with prejudice.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with

the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the petitioner, the respondent, and any counsel of record.

**FILED:** December 23, 2010.

Cheryl A. Eifert
United States Magistrate Judge