**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JAMES N. ESTEP,

                     Petitioner,

v.                                                    CIVIL  ACTION  NO.  3:10-0396

DAVID BALLARD, Warden
Mount Olive Correctional Complex,

                     Respondent.

**MEMORANDUM OPINION AND ORDER**

        James N. Estep ("Petitioner") filed an application for a writ of habeas corpus against David

Ballard ("Respondent"), the warden of Mount Olive Correctional Complex, on March 25, 2010,

alleging numerous federal constitutional violations arising from his State first degree murder

conviction.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to United States

Magistrate Judge Cheryl Eifert for submission to the Court of her Proposed Findings and

Recommendations.  Judge Eifert submitted a report on December 23, 2010.  Thereafter, on January

24, 2011, Petitioner submitted objections to the Findings and Recommendations.  This matter is now

before the Court on review.

        Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of any portion

of the Magistrate Judge's report to which objection is timely made.  Because Petitioner has filed

objections in this case, the Court will undertake a *de novo* review of the relevant portions of the

Magistrate Judge's report. As to those portions of the report to which no objection is made, the

Magistrate Judge's Findings and Recommendations will be upheld unless they are "clearly

erroneous" or "contrary to law." *See Webb v. Califano*, 468 F. Supp. 825, 828 (E.D. Cal. 1979) (citing 28 U.S.C. § 636(b)(1)(A)).

After an extensive review of the record in this case, the Court **ADOPTS** and **INCORPORATES** the portions of the Magistrate Judge's Proposed Findings and Recommendations to which no objection is filed, **ADOPTS** and **INCORPORATES** the portions of the Proposed Findings to which Petitioner objects, and **DISMISSES** the Petition for Writ of Habeas Corpus. [Doc. 2] The Court further **GRANTS** Respondent's Motion for Summary Judgment [Doc. 12], and **GRANTS** in part Petitioner's Application for a Certificate of Appealability. [Doc. 22] The Court **DENIES** the application otherwise.

## I.      Background

Petitioner was convicted of first degree felony murder and nighttime burglary after a four-day jury trial before the Honorable O.C. Spaulding in the Circuit Court of Putnam County, West Virginia.  The charges arose out of a November 16, 2001 incident involving Petitioner and his girlfriend.  The State alleged that, on the night of the 16th, Petitioner was a passenger in his girlfriend's car when it broke down in the area of Hurricane, West Virginia.  Petitioner knocked on the door of Donovan Barringer (the "victim") to request assistance.  The victim offered his help, and attempted to start the vehicle with jumper cables.  After the attempts were unsuccessful, Petitioner retrieved a baseball bat from the vehicle, and struck the victim three times in the head, resulting in his death.  He then dragged the body into a nearby field, entered the victim's home, and stole his wallet and two rifles.  Petitioner and his girlfriend were arrested shortly thereafter.

Petitioner was sentenced to life in prison without mercy on the murder charge, and a concurrent one to fifteen year sentence on the nighttime burglary charge.  Petitioner directly

appealed on a number of different grounds to the West Virginia Supreme Court of Appeals, but that court summarily refused the appeal. Petitioner then filed a *pro se* petition for a writ of habeas corpus ad subjiciendum in the Circuit Court of Putnam County, and was granted an omnibus hearing. The court denied Petitioner's final request for collateral relief on July 23, 2008. On appeal, the Supreme Court of Appeals affirmed the habeas court's findings, leading to the petition in this Court.

Petitioner originally raised various grounds for relief under 28 U.S.C. § 2254, including (1) eight claims of alleged ineffective assistance of counsel; (2) an objection to the trial court's admission of prejudicial, gruesome photos of the victim; (3) an objection to the trial court's alleged failure to properly instruct the jury on the application of W. Va. Code § 62-3-15 (the mercy rule) to the case; and (4) cumulative error. In a detailed and well-reasoned opinion, Magistrate Judge Eifert concluded that the defendant's motion for summary judgment should be granted on each ground, and that this Court should dismiss the petition.

The Magistrate Judge thoroughly chronicled the facts and procedural history in this case. Therefore, the Court addresses below only those facts relevant to the objections.

## II.    Discussion

Petitioner objects to the Proposed Findings and Recommendations on the fifth and sixth assertions of ineffective assistance of counsel under the first ground in his original petition. For two reasons, it is Petitioner's contention that the Magistrate Judge was incorrect in concluding that his attorneys' conduct did not fall below the applicable Sixth Amendment standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[1]  First, he claims that his attorneys failed to recognize clear West Virginia law requiring jury instructions in first degree murder cases to advise

---

[1]  Petitioner was represented at trial by two attorneys—James McCoy and Daniel Corey.

the jury that a mercy recommendation under W. Va. Code § 62-3-15 would not allow the defendant to be released until serving at least fifteen years in prison. Second, he contends that his attorneys failed to object when the State offered good character evidence of the victim in contravention of the West Virginia Rules of Evidence.

Finally, Petitioner also objects to the Magistrate Judge's finding as to the third ground raised in the petition—corresponding to his fifth assertion of ineffective assistance of counsel. He argues that the trial court erred as a matter of law for failing to clearly instruct the jury on the meaning of a life sentence with a mercy recommendation as required by the Supreme Court of Appeals in *State v. Lindsey*, 233 S.E.2d 734 (W. Va. 1977) and its progeny. Petitioner contends that this error denied him due process of law under the Fourteenth Amendment.

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs all habeas corpus petitions filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *see also Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Contained within the AEDPA are narrow parameters that severely restrict a federal court's scope of review over a habeas corpus petition. Specifically, the AEDPA provides that a petition for a writ of habeas corpus on behalf of a person in custody challenging the judgment of a State court cannot be granted with respect to any claim adjudicated on the merits in a State court proceeding, unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  With respect to claims adjudicated on the merits in State court, the

AEDPA confines federal court review to the narrow two-tiered analytical framework delineated in

the  statute.  *See Carlson v. Ferguson*, 993 F. Supp. 969, 972-73 (S. D. W. Va. 1998) (noting that

proper evaluation of all habeas claims requires a federal court to employ the two-tiered approach).

Accordingly, a federal court may not grant a habeas petition for any claim that was adjudicated on

the merits in State court unless the State court decision contravenes clearly established Supreme

Court precedent or involves an unreasonable determination of the facts in light of the evidence

presented.  *Id.* at 973.

Respondent has also moved for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure.  To obtain summary judgment, the moving party must show that there is no genuine

issue as to any material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c).  In considering a motion for summary judgment, the Court will not "weigh the evidence and

determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the Court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable

to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential

element of his or her case and does not make, after adequate time for discovery, a showing sufficient

to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

The Court considers Respondent's motion for summary judgment in light of the deferential standards that the AEDPA provides for review of habeas corpus petitions.

### B.    Ineffective Assistance of Counsel

Petitioner argues that his attorneys' performance before and during the trial fell below the Sixth Amendment standard for effective assistance of counsel.  *See Strickland*, 466  U.S. at 686 (recognizing the right to effective assistance of counsel).   The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  If an attorney's performance falls below a certain minimum level of professional competence, it may violate an accused's right to effective representation. *See Strickland*,  466 U.S. at 685.

The Supreme Court continues to endorse the familiar two-part *Strickland* test for determining when an attorney's performance violates an individual's Sixth Amendment right to effective representation. *See id.* at 687.  The first prong of *Strickland* requires the petitioner to show that his attorney committed an error that fell below a reasonable standard for professional competence. *See id.*  The reasonableness standard is an objective inquiry, which contemplates a wide range of acceptable and professional representation. *See id.* at 689.  The second prong of the test requires the petitioner to show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In all cases, however, "[j]udicial scrutiny of counsel's performance must be highly deferential" and courts must try to avoid retrospectively critical evaluations of

counsel's decisions.  *Id.* at 689.  In § 2254 habeas proceedings, the inquiry is even less exacting, as the federal court need only inquire as to whether the State court's application of *Strickland* to the facts was objectively unreasonable.  *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002).

### 1.    Improper Jury Instruction

Petitioner's first objection concerns his contention that one of his trial attorneys, Daniel Corey, acted unreasonably by objecting to language in the original jury instructions. The State had originally submitted proposed jury instructions that contained the following language:

> a recommendation of mercy would mean the defendant could be eligible for parole consideration after having served a minimum of 15 years . . . . [O]therwise the defendant will be confined in the penitentiary without the possibility of parole.  Mere eligibility for parole is no guarantee he would receive parole after 15 years.

Resp'ts Mot. for Summ. J. Ex. 9, No. 12-6 (Trial Tr. at 452) (hereinafter "Trial Tr.").  Petitioner's attorney requested that the court delete the portion of the instruction providing that a mercy recommendation in the context of a life sentence meant that the defendant must serve a minimum of fifteen years in prison in order to be eligible for parole.  The trial court adopted the change at defense counsel's request, and the pertinent section of the final instructions simply read that the defendant would not be eligible for parole unless the jury added into the verdict a recommendation of mercy.  *Id.* at 474-75.

Petitioner contends that his attorney disregarded the holding of the West Virginia Supreme Court of Appeals in *State v. Lindsey*, 233 S.E.2d 734 (W. Va. 1977) and endorsed instructions that misled the jury to believe that the law permits immediate parole eligibility with a mercy recommendation.  This, he submits, ultimately dissuaded the jury from granting—or even considering—mercy.  The State habeas court disagreed, and concluded that Petitioner's attorney

made a reasonable, tactical decision permissible under *Strickland*:

> From trial counsel's perspective, the issue is whether inclusion of the number of years would have the effect of increasing the probability that the jury, if it found guilty, would find no mercy. This consideration was intuitively weighed against the possibility that a jury would impose mercy should they find that the minimum sentence is 15 years. Some jurors may have believed 15 years was appropriate for parole consideration; whereas, others may have felt 15 years was insufficient. The latter group may have been more inclined to deny mercy. Such trial determinations are strategic in nature and best left to trial counsel and the Petitioner. There is no indication that the trial counsel made an objectively unreasonably [sic] decision.

Resp't's Mot. for Summ. J. Ex. 6, at 46, No. 12-2. The Court agrees, and believes that the State habeas court's decision was not contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(d)(1)-(2).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91; *Winston v. Kelly*, 592 F.3d 535, 545 (4th Cir. 2010) ("'On habeas review, a federal court generally credits plausible strategic judgments in the trial of a state case.'" (quoting *Vinson v. True*, 436 F.3d 412, 419 (4th Cir. 2006))). The State habeas court in this case correctly set forth the *Strickland* standard and reasonably applied it to the facts presented. It concluded that counsel discussed his decision to remove the now-contested language "at length" with the trial court and Petitioner. Resp't's Mot. for Summ. J. Ex. 6, at 46, No. 12-2. The trial record thoroughly details this fact in an exchange between Mr. Corey, the trial judge, and the prosecuting attorney, Mark Sorsaia:

| THE COURT: | And do you have any other objections? And specifically let us look at the language at the bottom of the last page. |
| --- | --- |
| MR. COREY: | Judge, I believe I have, after consulting with Mr. Estep and Mr. McCoy, we propose that striking the language beginning with the word "a recommendation of mercy |

would mean the defendant could be eligible for parole consideration after having served a minimum of 15 years," and then "otherwise the defendant will be confined in the penitentiary without the possibility of parole. Mere eligibility for parole is no guarantee he would receive parole after 15 years." And then deleting all the way to the end and inserting the words "and there are no guarantees to the defendant that he would be granted parole," period. And then just "mere eligibility for parole in no way guarantees the granting of parole." Those two sentences.

THE COURT:      So you want to exclude any reference as to the number of years as to when a person would be eligible for parole?

MR. COREY:      Yes, Judge.

THE COURT:      And you want to simply say, you want generalized language that there's no guarantee of parole, that parole is given to inmates only after a thorough consideration of the inmates after a parole hearing. I mean, is it the years that you're objecting to?

MR. COREY:      Yes, Judge. Yes, Judge. After consulting this, in fact at length with Mr. Estep, we object that being –

THE COURT:      And is there case law to support the proposition that a defendant has a right to not advise the jury as to the years of parole?

MR. COREY:      I believe it's State versus Guthrie, Judge.

THE COURT:      Mr. Frye, are you all aware of any?

MR. SORSAIA:    Your Honor, it was our impression that there's some dicta in Guthrie about it being improper to talk about the number of years, and we put it in there and we were going to raise it with the Court, because it's been our experience that some defendants want that in there, that they want the jury to know that its's 15 years. We put it in there. If they wanted to leave it in there, we weren't going to object. . . .

. . . .

-9-

THE COURT:          . . . Now let me read to you the revised paragraph to make certain that you've got the changes made, then we'll talk about those changes.  Okay.  It would now read, "A recommendation of mercy would mean that the defendant would be eligible for parole consideration by the parole board.  Otherwise, the defendant would be confined to the penitentiary for life without possibility of parole.  Mere eligibility for parole in no way guarantees parole.  Parole is given to inmates only after a thorough consideration of their record by the parole board."  Is that satisfactory to you?

MR. COREY:          Judge, and I believe this is, I believe, this is a correct description of the law.  After the words "mere eligibility for parole in no way guarantees," I would like on behalf of my client here to insert the words, or something akin thereto, such as "mere eligibility for parole in no way guarantees the defendant would ever be granted parole." "In no way guarantees the defendant would ever be granted parole."

THE COURT:          Okay, any problem with that?  To me it says the same thing.  I'll say it their way if that's the way they want to say it.

. . .

THE COURT:          All right.  So it would now read - - by the way, I'm putting a "that" in this time.  "Mere eligibility for parole in no way guarantees that the defendant would ever be granted parole."

MR. COREY:          That's fine with us, Judge.

Trial Tr. at 452-56.  It was not unreasonable for the State habeas court, in considering this discussion, to conclude that Petitioner's attorney made a reasonable tactical decision after consultation with Petitioner.  This exchange suggests that this consultation was extensive and reached because of the thought that a time designation could potentially dissuade some of the jury members from granting mercy, instead believing that eligibility for parole after only fifteen years would be insufficient in light of Petitioner's crime.  This is precisely the type of strategic decision

-10-

that should not be disturbed, even if it was unsuccessful in retrospect.

Further, the decision appears to have been made with adequate investigation and preparation. Petitioner disagrees, arguing that his attorney disregarded the directly applicable West Virginia Supreme Court of Appeals decision in *Lindsey*.  In *Lindsey*, the court considered whether a circuit court's instruction to the jury regarding a mercy recommendation was proper.  233 S.E.2d 738-39. A jury had returned a guilty verdict without mercy for the defendant after the trial court had instructed it that "if you so find Defendant . . . guilty and you recommend mercy, he will be *entitled* to parole under the applicable statute of the State of West Virginia."  *Id.* at 738 (emphasis in original).  Upon a question from the jury after it had begun deliberations, the court further instructed that "[i]f the jury should come back with a verdict of guilty with a recommendation of mercy, that means that the accused will be *subject* to parole under the applicable statutes of this State."  *Id.* (emphasis in original).  On review, the Supreme Court of Appeals reversed.  *Id.* at 739.  It reasoned that the instructions, as phrased, gave the jury the misleading perception that if it had recommended mercy, the defendant would spend little or no time in prison, perhaps leading some members to refuse a mercy recommendation out of an abundance of caution.  *Id.*  Consequently, it held that courts "must inform the jury, should it recommend mercy, the defendant would be eligible for consideration for parole only after he served [the minimum term of imprisonment under applicable State law]."  *Id.*

In light of the holding in *Lindsey*, Petitioner contends that the jury instructions in his case left the clear impression that a recommendation of mercy would mean that he would become eligible for parole consideration immediately because they did not include an accurate description of the law in terms of the minimum amount of time he would have to serve before becoming eligible.  It must

be remembered, on collateral review under 28 U.S.C. § 2254(d)(1)-(2), that the Court must only consider whether the State court's decision on a claim was "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent.  While the Court agrees that the ultimate instructions in his case seem to run counter to the holding in *Lindsey*, later West Virginia cases extend more flexibility to trial attorneys to make tactical decisions on mercy instructions.

As a threshold matter, the final instruction in this case did not misstate the law.  While the instruction in *Lindsey* stated that the defendant would be entitled to parole if mercy was granted, the instruction at issue here only suggested that Petitioner would be eligible for parole, and that eligibility in no way guaranteed that it would ever be granted.  The latter, while potentially confusing and incomplete, does not include an incorrect statement of law like the instruction in *Lindsey*.  This distinction does not solely govern the propriety of the State habeas court's determination on the application of *Strickland* to this claim, but it supports that court's reasoning that Petitioner's instruction was not legally erroneous.

In *State v. Headly*, 282 S.E.2d 872 (W. Va. 1981), the Supreme Court of Appeals tackled the issue presented in *Lindsey*.  There, the court considered the appropriateness of an instruction stating that, if the jury found the defendant guilty with a recommendation of mercy, he would be eligible for parole.  *Id.* at 875.  The Court found that while it was an accurate statement, the instruction was misleading because it gave the jury members, who did not have full knowledge of the law, the impression that the defendant could go free immediately at the whim of the parole board.  *Id.*

It is apparent that the instruction in *Headly* and the one at issue here are somewhat analogous in that they both omit the minimum sentence the defendant must serve if the jury recommends mercy. But the court in *Headly* went on to note that defendants are "entitled to any instruction which

-12-

correctly states the law" and which they deem "will present the proposition in its most favorable light." *Id.* (citing *State v. Wayne*, 245 S.E.2d 838, 843 (1978)). The court stated the following in relation to its holding:

> [We recognize] the tactical considerations involved in the wording of the instruction. However, in the case before us it is clear that the defendant's acquiescence to the court's wording of the instruction was less a tactical choice than it was an oversight, making the conviction susceptible to collateral attack for ineffective assistance of counsel. Hence, we conclude that, *when the defendant fails to offer an instruction on the effect of a recommendation of mercy when one is appropriate*, the trial court must give an instruction which comports with the holding in [*Lindsey*].

*Id.* (emphasis added). The governing distinction under West Virginia law, then, becomes the extent to which counsel is active in offering instructions on the effect of mercy. The attorney in *Headly* simply did not object to otherwise confusing instructions (an oversight); Petitioner's attorney, on the other hand, affirmatively offered instructions that may have been, if adopted by the trial court without objection, insufficient and subject to collateral attack. His actions, however, were consistent with *Headly* and reflect the fact that "any instruction on . . . [the effect of a mercy recommendation] is very much a question of trial tactics" as long as it correctly states the law. *See Wayne*, 245 S.E.2d at 843. The State habeas court concluded that it did in this case, and this decision does not represent an unreasonable application of *Strickland*. *Cf. Bell v. Ozmint*, 332 F.3d 229, 243 (4th Cir. 2003) (finding that a state court was not unreasonable in finding neither deficient performance nor prejudice in trial counsel's failure to request a parole eligibility instruction under state law).[2]

---

[2] Petitioner makes much of the Magistrate Judge's reliance on *Bell*. It does not matter though, as Petitioner argues, that a South Carolina Supreme Court case relied on by *Bell* was ultimately reversed. The Magistrate Judge correctly drew an analogy between *Bell* and the instant case to show that trial counsel may make a strategic decision not to request an instruction informing the jury that a defendant would be eligible for parole after a certain period of time for

Admittedly, in the exchange excerpted above, Petitioner's attorney cited to *State v. Guthrie*, 461 S.E.2d 163 (W. Va. 1995) when asked whether there was case law to support the proposition that a defendant has a right not to advise the jury on the minimum term of imprisonment required with a mercy recommendation. *Guthrie* discussed the rule established by *Lindsey* in noting that a prosecutor may not distort the effect of the mercy recommendation in discussing possible penalties to a jury. *Id.* at 184. However, it went on to hold that, outside the context of cases involving mercy, it is generally "improper for either party to refer to the sentencing possibilities of the trial court should certain verdicts be found or to refer to the ability of the trial court to place a defendant on probation." *Id.* at 184 (citations removed). To be sure, this holding did not squarely address the trial judge's question of whether a defendant has a right not to advise the jury as to the amount of time he must spend in prison if mercy is recommended. However, the State habeas court suggested that counsel's discussions implied that he had an adequate understanding of the foregoing law due to the fact that he discussed it "at length" with Petitioner and the court. Resp'ts Mot. for Summ. J. Ex. 6, at 37, 45-46, No. 12-2. The Court cannot conclude that the record does not support this finding.

For these reasons, the Court rejects Petitioner's objection to the Magistrate Judge's finding on his attorney's decision to request that the trial court remove language from the final jury instructions stating that a grant of mercy will be applicable only following a specific minimum term of imprisonment.[3]

_____

fear of the collateral consequences of doing so. 332 F.3d at 243. As noted above, the Court does not believe that West Virginia law mandates a different result so long as the instruction ultimately offered does not misstate the law.

[3] The Court further agrees with the Magistrate Judge's finding that Petitioner has likewise failed to establish prejudice under the second prong of *Strickland* on this issue. The jury could have refused a mercy recommendation even if the mandatory minimum sentence was included in

### 2.      Introduction of Good Character Evidence

Petitioner also objects to the failure of his trial counsel to contest the State's direct examination of the victim's nephew, or its cross-examination of Petitioner, when on both occasions evidence regarding the good character of the victim was elicited in contravention of Rule 404 of the West Virginia Rules of Evidence.  Rule 404 pertinently provides that, while evidence of a person's character is not admissible for the purposes of proving that he or she acted in conformity therewith, evidence of the character of a victim of a crime may be offered when introduced first by the accused for a pertinent character trait.  W. Va. R. Evid. 404(a)(2).

As the Magistrate Judge noted, Petitioner raised this argument for the first time in his direct appeal to the Supreme Court of Appeals.  This claim was not addressed by the State habeas court. Therefore, the Magistrate Judge conducted an independent but deferential review of the record and the applicable law in order to determine whether the State's decision to reject the claim was reasonable.  *See Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (suggesting that, if the State court does not articulate the rationale underlying its adjudication, a federal habeas court must examine the record and any clearly established Supreme Court precedent in order to determine whether the State court's adjudication was unreasonable).

### a.      Exhaustion

In response to this Court's February 16, 2011 Order requesting supplemental briefing on this issue, Respondent submitted a brief outlining various arguments.  The brief also notes that, because

---

the instructions.  The State habeas court's conclusion to the same effect was not "contrary to" or an "unreasonable application of" *Strickland*.  28 U.S.C. § 2254(d)(1)-(2).

Petitioner raised this claim only on direct appeal—and not in the State habeas proceeding or subsequent habeas appeal—he has failed to exhaust his State-available remedies. Under the AEDPA, a writ of habeas corpus cannot be granted unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To properly exhaust available State court remedies, habeas petitioners must "fairly present" their federal claims in each appropriate court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). It is the petitioner's burden to show that available State remedies have been exhausted. *See Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994). "The exhaustion requirement is satisfied when the 'essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court.'" *See Wilson v. Johnson*, No. 2:09-cv-177, 2010 U.S. Dist. LEXIS 6677, at *3-4 (E.D. Va. Jan. 4, 2010) (quoting *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991)). A petitioner need not, however, seek collateral review on the same issues already decided on direct review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

In this case, Petitioner clearly raised the instant claim in his application for direct review to the Supreme Court of Appeals. Respondent argues that the Supreme Court of Appeals will not address such claims if they are presented for the first time on direct review. As ineffective assistance of counsel is a highly factual inquiry, that court has previously reasoned, "[i]t is the extremely rare case when [we] . . . will find ineffective assistance of counsel when such a charge is raised as an assignment of error on direct appeal" without a prudently developed factual record. *See* Syl. pt. 10, *State v. Triplett*, 421 S.E.2d 511, 513-14 (W. Va. 1992) (the "*Triplett*" rule). However, this language, while strong, is only advisory. It does not say that counsel must develop a factual

-16-

record—only that the court is unlikely to find ineffective assistance of counsel in the absence of one. Therefore, inasmuch as West Virginia's procedural rules do not prohibit defendants from raising ineffective assistance of counsel claims on direct appeal, Petitioner has properly given the State's highest court the opportunity to address his claim.

In any event, the Court believes that Respondent has waived the exhaustion defense in this case. The State may waive exhaustion, but it must do so expressly and through counsel. 28 U.S.C. § 2254(b)(3); *see also Wilson*, 2010 U.S. Dist. LEXIS 6677, at *6-7 (noting that the exhaustion defense is not jurisdictional, and may be waived in narrow circumstances). Respondent's answer to the instant habeas petition stated that "Petitioner has had a full and fair opportunity to properly present his claims to the appropriate courts and appears to be colorably exhausted." Resp'ts. Answer 2, No. 11.

On similar facts, the Third Circuit recently found waiver of the exhaustion defense. *See Sharrieff v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009). In *Sharrieff*, the court found that the State had expressly and unambiguously relinquished its right to assert the exhaustion defense where its answer to a habeas petition stated that it "appears that [the petitioner] has exhausted his state court remedy . . . since he presented it to the state's highest court in his petition for certification." *Id.* (internal quotation marks omitted). To qualify as "express," a waiver of exhaustion must be "clear, explicit, and unambiguous." *Id.* The Court has no reservation with the finding that Respondent has waived the exhaustion defense by raising it for the first and only time in response to the Court's request for additional briefing on the instant issue, and like the defendant in *Sharrieff*, by expressly stating in its response to the petition that Petitioner's claims "appear[] to be colorably exhausted."

### b.      Procedural Default

Respondent does not believe the petition's procedural faults to be limited to a failure to exhaust State remedies.  Rather, he argues that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because the Supreme Court of Appeals, in light of *Triplett*, refused to address the claim on direct appeal, and because Petitioner did not timely raise it in his subsequent State habeas proceeding.  "'If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.'"  *Jones v. Sussex I State Prison*, 591 F.3d 707, 715 (4th Cir. 2010) (quoting *Breard*, 134 F.3d at 619 (further citations omitted)).  There can be no federal review in such cases.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Procedural default is an affirmative defense, and the burden rests with the State to prove its adequacy.  *Jones*, 591 F.3d at 716.  Even if a waiver could satisfy the exhaustion requirement, as in this case, a claim may still be defaulted if the petitioner fails to comply with applicable State procedural rules in raising it.  *See Wilson*, 2010 U.S. Dist. LEXIS 6677, at *8.

As an initial matter, the Supreme Court of Appeals summarily refused Petitioner's appeal.  Thus, it did not say whether it was dismissing his claims on procedural or substantive grounds.  As Respondent correctly points out, the State's highest court may summarily deny a claim on the merits, even if the claim would qualify for a procedural dismissal.  *See Walker v. Martin*, No. 09-996, 2011 U.S. LEXIS 1712, at *22 (U.S. Feb. 23, 2011).  However, as already discussed, this Court does not read the *Triplett* rule to mandate that a defendant present his claim of ineffective assistance of counsel in a State collateral proceeding.  Instead, the cases uncovered suggest that the Supreme

Court of Appeals prefers—not requires—these claims to be first raised in such proceedings because they provide an opportunity for the complete development of a factual record. *See, e.g., State v. Jessie*, 689 S.E.2d 21, 32-33 (W. Va. 2009) ("[A]llegations of ineffective assistance of counsel are *preferably* brought to the court's attention in a habeas corpus action." (emphasis added)). Even where it has cited to *Triplett*, the court has continuously addressed the merits of ineffective assistance claims on appeal. *See id.* (noting that an appellant's contention that his counsel was ineffective lacked merit, despite the claim being presented on a direct appeal).

While it is true that the court in this case did not have a full factual record in terms of Petitioner's ineffective assistance claim, it did have clear notice of the basis for the claim along with the complete trial record. Its decision to deny the appeal was likely based upon the conclusion that trial counsel's conduct was presumptively reasonable in this case. Great deference to counsel's conduct on the merits, though, does not amount to a procedural dismissal. Therefore, the Court finds that Petitioner's claim is not procedurally defaulted, and addresses it on the merits.

### c.    The Merits

The contested character evidence was admitted via the testimony of Mr. Greg Barringer, the victim's nephew. The relevant portions of this testimony are as follows:

Q      Can you describe to the jury what your relationship with [(the victim)] was like?

A      It was the best of relationships. Donovan was like a brother, a father, all rolled up into one. He was my sounding board. He and I did all kinds of things together, and he was my encourager. He gave me advice. Taught me all kinds of things. Taught me how to throw a baseball, how to catch a football, how to fish and hunt, and how to drive a car. Just all kinds of things like that. . . .

Q      What was his personality like?

-19-

A It's hard to sum up a person's life in just a few words.  Everyone else has notes and lawyers and -- I stop and think about him and the word humble comes to mind.  Donovan was the most humble person that I ever met in my life. Never beat his own chest, never bragged.  He bragged a lot, but he always bragged about his family.  I never once in my life heard him brag about himself.  He was hard working, honest, patriotic, patient, kind, gentle, all kinds of adjectives that would describe Donovan and in the best of light.  He was a strong moral fiber.  He was an extremely hard-working individual.  He worked as a union laborer and never shirked, never shied away from hard work.  Any dirty job, hard job, he was always willing, without ever complaining, to do the work.

...

Q Did he have a tendency to be wanting to help others, generous? How would you describe him in that category?

A Donovan was a very generous person.  If he had -- and I've seen him do it time after time -- if he had two of anything and one of them was worn and one of them was new, he would give the other person the new one.  He was generous to a fault.  He helped people.  And I've found out since his death lots and lots of people have come up to me and told me the things that he did for them.  He raised a garden, he gave away literally tons of food to people.  He helped people when he would hear that they were out of work.  He would help them with food and money, and nieces and nephews and sisters.  He was always helping everybody.  If there was something that needed done around your house, you didn't have to call him.  If he knew about it, there he was.  And he always jumped in, you never had to ask him, it was always he was there to do it and willing and happy to do it.

Trial Tr. at 213-16.  The exchange goes on in a similar vein with a glowing discussion of the victim.

*Id.*  Petitioner also points out that the prosecution alluded to the victim's character during its cross-examination of Petitioner, and during closing arguments.

  The Magistrate Judge declined to "speculate as to whether counsel failed to object in error or for strategic reasons."  Instead, she proceeded to the second prong of *Strickland*, and determined that Petitioner is unable to establish actual prejudice to his trial based upon the introduction of this evidence.  This Court believes it necessary to address both prongs.

### 1)    Conduct

Petitioner argues that his attorney's performance was deficient within the meaning of *Strickland* because he failed to object to character evidence offered in violation of Rule 404(a)(2) of the West Virginia Rules of Evidence.

"Evidentiary decisions are fundamentally a matter of state law, and each state has the power to regulate how evidence is presented and excluded within its own courts." *Woodruff v. Warden*, No. 9:07-2739-PMD-GCK, 2008 U.S. Dist. LEXIS 68195, at *9-10 (D.S.C. Sept. 8, 2008); *see also Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960) (suggesting that the general admissibility of evidence in State court does not typically present a federal issue). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (citing *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) (internal quotation marks omitted)). "[R]elief is in order only where the challenged evidence 'is a crucial, critical, or highly significant factor in the context of the entire trial.'" *See Carson v. Collins*, 993 F.2d 461, 465 (5th Cir. 1993) (quoting *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987)). In this case, then, the appropriate action is not to reassess the correctness of the State court's evidentiary rulings under its own law, but to determine whether counsel's failure to object to otherwise inadmissible evidence constituted deficient performance under *Strickland*. Further, the Court must determine if the introduction of the inadmissible evidence "impugn[ed] fundamental fairness or infring[ed] specific constitutional protections." *Barbe*, 521 F.3d at 452.

As noted, the Magistrate Judge did not address whether the Petitioner's attorney acted unreasonably. However, this Court believes that, in light of the applicable legal standards, it is clear

that he did.  Even affording a disproportionate amount of deference in light of Petitioner's failure

to develop a detailed factual record, there is no good reason why counsel failed to object to the long

line of questioning regarding the victim's character.  Rule 404(a)(2) allows the prosecution to

introduce evidence of the victim's character only upon introduction by the defendant of evidence

for a relevant character trait.  During trial, Petitioner did not introduce *any* evidence of the victim's

character prior to the questioning noted above.  Nor did he contend that the victim was an aggressor

in the case.  The Court cannot infer counsel's tactical choice where no choice appears to have been

made at all.[4]

    The Court finds unpersuasive Respondent's contention that good character evidence is

admissible in unitary trials on the issue of mercy in contravention of Rule 404(a)(2).  Under West

Virginia law, "[a] trial court has discretionary authority to bifurcate a trial and sentencing in any

case where a jury is required to make a finding as to mercy."  Syl. pt. 4, *State v. LaRock*, 470 S.E.2d

---

    [4]  It would be very difficult for Petitioner to obtain a hearing in this Court on the facts
presented.  *See* 28 U.S.C. § 2254(e)(1) (noting that the applicant has the burden of "rebutting the
presumption of correctness by clear and convincing evidence" of the State court's factual
findings).  Where a petitioner fails to develop the record in State court, a hearing may only be
granted where the applicant shows that

> (A) the claim relies on (I) a new rule of constitutional law, made
> retroactive on collateral review by the Supreme Court, that was
> previously unavailable; or (ii) a factual predicate that could not have
> been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by
> clear and convincing evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant guilty of the
> underlying offense.

*Id.* § 2254(e)(2)(A)-(B).  Here, there is no new constitutional rule that would entitle Petitioner to
relief, and further no alleged reason why he failed to discover the facts that would have entitled
him to an omnibus hearing in State court on this precise issue.

613, 618 (W. Va. 1996).  Admissibility of evidence is simply a factor the *LaRock* court noted that the trial courts should consider in determining whether to bifurcate the trial in the first instance.  *See State ex rel. Dunlap v. McBride*, 691 S.E.2d 183, 192 (W. Va. 2010) (discussing Syl. pt. 6, *LaRock*, 470 S.E.2d at 618).  There is no indication from *LaRock* or its progeny that evidence otherwise inadmissible during the guilt phase of a trial becomes admissible by virtue of the fact that it is presented in a unitary proceeding where the jury is also considering mercy.  *See State v. Berry*, No. 35501, 2011 WL 197420 (implying as much).  In fact, the authorities on point suggest the complete opposite conclusion.  *See State v. McLaughlin*, 700 S.E.2d 289, 300 (W. Va. 2010) (holding that the type of evidence admissible in the mercy phase of a bifurcated first degree murder trial is much broader than evidence admissible during the guilt phase).  However intellectually dissatisfying it may be to Respondent, in a unitary trial, the West Virginia Rules of Evidence apply strictly and completely.  *See id.* (Ketchum, J., dissenting) (noting that bifurcation "allows the State to introduce . . . [generally] inadmissible . . character[] evidence at the *penalty* phase of the trial" (emphasis added)).[5]

---

[5] Petitioner's argument is intertwined with his counsel's decision to proceed with a unitary trial.  He does not object to the portion of the Magistrate Judge's Proposed Findings rejecting the claim that his attorney acted unreasonably in failing to recommend bifurcation. Petitioner originally argued, in this respect, that had there been a bifurcated trial, prejudicial evidence offered to prove his guilt would not have adversely affected the jury's decision on whether to give a mercy recommendation.  The State habeas court found that bifurcation was unnecessary under State law, and further concluded that the attorney discussed the pros and cons of bifurcation with Petitioner before advising the trial court on his decision.  Therefore, the court found that the decision was a strategic one made after a reasonable inquiry.  Under *Strickland*, then, it was permissible.  Resp'ts Mot. for Summ. J. Ex. 6, at 44-45, No. 12-2.

The Court does not have before it testimony or other evidence from Petitioner's trial counsel explaining the exact aspects of the strategy relating to this issue.  As noted, either the defendant or the prosecution may make a motion to bifurcate a trial.  *See LaRock*, 470 S.E.2d at 633.  Therefore, even if Petitioner's counsel wanted to proceed in a unitary trial to obtain the

-23-

Habeas petitioners generally bear the burden of developing the facts which entitle them to relief. *Duncan v. Baldwin*, No. 93-35476, 1994 U.S. App. LEXIS 2964, at *3 (9th Cir. 1993). But this was not a minor oversight; the prosecution's witness gave a long speech about the victim that was patently impermissible under West Virginia's Rules of Evidence without so much as a limiting instruction proposed by Petitioner's trial counsel. Respondent suggests that counsel could have reasonably not wanted to draw attention to the victim's good character traits by objecting and also may not have wanted to sound antagonistic. This explanation is not compelling. If counsel was so concerned about appearing callous or keying the jury in on the prejudicial nature of this evidence, he could have approached the bench and objected. The entire strategy at trial was to essentially concede many of the facts in the indictment, and to primarily seek a mercy recommendation from the jury in a unitary proceeding. An overload of evidence on the victim's good character would have only served to undermine this effort.

Therefore, the Court believes that Petitioner's trial counsel committed an error that fell below the reasonable standard for professional competence. *See Strickland*, 466 U.S. at 687.

### 2) Prejudice

In order to be entitled to relief, Petitioner must also establish that his attorneys' error prejudiced him. *See id.* at 694. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is one that is sufficient to "undermine confidence in the outcome." *Id.*

---

benefit of the stricter evidentiary rules, the prosecution could have asked the trial court to bifurcate for the precise purpose of introducing this character evidence. Of course, in this case, the prosecution did not make such a motion, and could not change the application of the West Virginia Rules of Evidence in a unitary proceeding. *See McLaughlin*, 700 S.E.2d at 300.

-24-

As to prejudice, the Magistrate Judge found that the characteristics of the victim to which his nephew testified could have reasonably been inferred from the facts of the case. The victim, after all, was killed while selflessly trying to help Petitioner and his girlfriend—two complete strangers. She further went on to note that the "abundance of evidence" in the case supported the jury's verdict, and that there was  "no presumptively prejudicial factor" that could have compelled the jury to change its mind.

Petitioner objects to the Magistrate Judge's findings as to prejudice.  He argues that it is illogical to assume that the jury would have inferred the victim's good character traits without the testimony.  Pet'r's Objection 17, No. 21 ("There are many reasons why someone would help a stranger, not all of them altruistic.  Even most of the good reasons to help strangers do not suggest the foregoing glowing attributes.").  He further reasons that the Magistrate Judge applied her reasoning to the issue of whether the good character testimony affected the jury's finding as to guilt. It is his contention that the inappropriate evidence affected not the jury's finding of guilt, but its decision to refuse a mercy recommendation.

The Fourth Circuit has previously detailed West Virginia's rules on mercy recommendations:

> "[Under West Virginia law the] jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole. . . ." W. Va. Code § 62-3-15.  Trial judges are required to instruct the jury that mercy is an option, *State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412, 422 (1983), but judges are forbidden to instruct the jury on what factors they should consider in determining whether to grant mercy.  *State v. Miller*, 178 W. Va. 618, 363 S.E.2d 504, 509 (1987).

*Billotti v. Legursky*, 975 F.2d 113, 117 (4th Cir. 1992).  In deciding whether or not to afford a defendant a mercy recommendation, the jury may consider and assess all of the evidence presented at trial.  *See id.*  The determination, however, remains exceedingly speculative, and a reviewing

court rarely has knowledge of the precise reasons why a jury may have decided for or against recommending mercy.

While the character testimony in this case could have induced the jury to refuse a mercy recommendation, the jury could have still declined to recommend mercy even if counsel had properly objected.  The State introduced overwhelming evidence of guilt, and the crime itself was particularly brutal.  Petitioner's own defense highlighted the victim's kindness, and conceded many of the prosecution's essential allegations.[6]  In either case, the Court must engage in some speculation.  While it is a close call, the Court believes—in light of the extremely deferential standards of the AEDPA, 28 U.S.C. § 2254(d)(1)-(2), and Petitioner's own failure to develop a clear factual record on this issue—that Petitioner has failed to show that the outcome on a mercy recommendation would have been different had his attorney properly objected to this evidence. Petitioner offered his most compelling arguments for mercy, including his age, immaturity, and his family circumstances. However, the jury was simply not persuaded.  The Court therefore cannot say with a reasonable probability that the jury's decision would have been different if counsel had properly objected to the introduction of the character evidence.

### C.      Jury Instruction—Due Process

Petitioner also objects to the Magistrate Judge's conclusion as to the third ground of error, which corresponds to his fifth alleged instance of ineffective assistance of counsel.  As discussed,

---

[6] Petitioner argued that he did not intend to kill the victim, but only to knock him unconscious.  The State, however, proceeded on a first degree felony murder theory, and was not required to prove that he had the specific intent to kill.  *State v. Williams*, 305 S.E.2d 251, 267 (W. Va. 1983).  While possibly relevant on the guilt issue, defense counsel's aim was to use this argument to seek a mercy recommendation.  Inasmuch as many of the facts constituting Petitioner's guilt were conceded, the unitary trial functioned very much like a sentencing proceeding.

Petitioner argues that the trial court violated his Fourteenth Amendment due process rights by failing to instruct the jury that he would have to serve a minimum of fifteen years in prison if it found him guilty of first degree murder with a recommendation of mercy.

"Federal habeas courts are without authority to correct a simple misapplication of state criminal law or procedure, 'but may intervene only to correct wrongs of [a federal] constitutional dimension.'" *Luchenburg v. Smith*, 79 F.3d 388, 391 (4th Cir. 1996) (quoting *Smith v. Phillips*, 455 U.S. 209, 221 (1982)).   An erroneous jury instruction may form the basis of a habeas challenge where the instruction renders the trial fundamentally unfair by infecting the ultimate result.  *Id.* (discussing the standard a petitioner must meet to properly allege a due process violation (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))).  Further, mere omissions from a jury instruction are less likely to satisfy this standard than erroneous ones.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

As the Court has already noted, the mercy instruction in this case was proper under State law. Therefore, Petitioner has not satisfied the *Luchenburg* inquiry because the instruction is not erroneous.  The State court issued a holding on the instant issue subsumed in its discussion of Petitioner's ineffective assistance of counsel claim.  It found that the "jury was adequately instructed as to the applicable law" and that there was "no indication that the Court is required to instruct the jury on the specific sentence and mandatory minimum a defendant may receive."  Resp'ts Mot. for Summ. J. Ex. 6, at 56, No. 12-2

Petitioner's ability to give the instruction in this case was not impeded by the court, and his attorney discussed the issue with him at length.  As the Magistrate Judge correctly noted, the fundamental inquiry mandated by *Lindsey*, *Wayne*, and *Headley* is whether a mercy instruction

-27-

correctly states the law, and whether trial counsel is active in seeking the instruction given.  Where counsel makes a tactical decision to offer a mercy instruction—one that may even be slightly confusing to the jury if viewed in the abstract—it is not error for the court to offer it so long as it does not misstate the law.  *Headley*, 282 S.E.2d at 875 (noting that confusing instructions offered due to an attorney's improper acquiescence render a conviction subject to collateral attack for ineffective assistance of counsel).

West Virginia's mercy recommendation procedures are fair, and they afford defendants flexibility to instruct the jury on mercy in a manner most favorable to their case.  *See id.* at 875; *see also Billotti*, 975 F.2d at 117 (noting that these procedures are consistent with the "long tradition of discretionary sentencing practice in this country").  Here, Petitioner's attorney thought it plausible that some jury members would believe that a fifteen-year minimum prison sentence was inadequate given the facts of his case.  Therefore, he chose to remove that language from the instruction, and rather place emphasis on the fact that a mercy recommendation in no way guaranteed that the defendant would ever be granted mercy by the parole board.  The instruction did not misstate the law, and counsel's actions were consistent with West Virginia precedent.

Because Petitioner's attorney made a tactical decision to remove language from the instructions detailing the amount of years Petitioner would have to serve in prison before becoming eligible for parole, it was not error for the trial court to give those instructions to the jury in light of West Virginia law.  The instruction did not so "infect[] the entire trial [such] that the resulting conviction violates due process."  *Henderson*, 431 U.S. at 154 (internal quotations omitted).  On collateral review, "[t]he burden of demonstrating that an erroneous instruction was . . . prejudicial . . . is even greater than the showing required to establish plain error on direct appeal."  *Id*

-28-

Consequently, Petitioner is not entitled to relief.

### D.    Certificate of Appealability

The Court additionally has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).

In this case, the Court believes that Petitioner has satisfied his burden under § 2253(c) with respect to his sixth assertion of ineffective assistance of counsel related to the prosecution's introduction of good character evidence of the victim at trial.  The Court therefore **GRANTS** a certificate of appealability on this issue, but otherwise **DENIES** Petitioner's application.

## III.    Conclusion

In accordance with the foregoing opinion, the Court **ORDERS**:

1.    That the portions of the Magistrate Judge's Proposed Findings and Recommendations to which no objection is filed are hereby **ADOPTED** and **INCORPORATED** herein;

2.    That the portions of the Magistrate Judge's Proposed Findings and Recommendations to which objection is filed are hereby **ADOPTED** and **INCORPORATED** herein;

3.    That the Petition for Writ of Habeas Corpus [Doc. 2] is **DISMISSED**;

-29-

4.      That Respondent's Motion for Summary Judgment [Doc. 12] is **GRANTED**; and

5.      That Petitioner's Application for a Certificate of Appealability is **GRANTED** in part

with respect to Petitioner's sixth assertion of ineffective assistance of counsel related

to the prosecution's introduction of good character evidence of the victim at trial

[Doc. 22], and that the Application is otherwise **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel

of record and any unrepresented parties.


ENTER:          March 21, 20111

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE


-30-